07-0156-ag
Corovic v. Mukasey

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued: November 6, 2007                          Decided: March 7, 2008)

Docket No. 07-0156-ag

SAFET COROVIC, VESMINA COROVIC, ILDA COROVIC,

>  *Petitioners*,

>  v.

MICHAEL B. MUKASEY, Attorney General,[*]

>  *Respondent.*

Before: CABRANES, SACK, and HALL, *Circuit Judges.*

Petitioners seek review of an order of the Board of Immigration Appeals ("BIA") affirming the decision of an Immigration Judge ("IJ") denying them asylum, withholding of removal, and relief under the Convention Against Torture. We conclude that (1) the submission of certain documents to the Macedonian government violated petitioners' right of confidentiality protected by 8 C.F.R. § 208.6; (2) the BIA and IJ erred in relying on evidence that the IJ had previously excluded; and (3) an adverse credibility determination cannot rest on an applicant's submission of fraudulent documents unless accompanied by a factual finding that the asylum applicant knew the submitted documents were fraudulent.

Petition granted.

>  MARTIN E. GOLD, (Henry F. Minnerop, Brenda F. Szydlo, Kimberly V. Allman, *on the brief*), Sidley Austin LLP, New York, NY, *for Petitioners.*

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as respondent in this case.

ADA E. BOSQUE, Trial Attorney, (Peter D. Keisler, Assistant Attorney General, *on the brief*; Ethan B. Kanter, Senior Litigation Counsel, *of counsel*), Office of Immigration Litigation, United States Department of Justice, Washington, DC, *for Respondent*.

JOSÉ A. CABRANES, *Circuit Judge*:

Petitioners Safet Corovic ("Corovic"), his wife Vesmina Corovic ("Vesmina"), and their daughter Ilda Corovic ("Ilda"), natives and citizens of the Former Yugoslav Republic of Macedonia ("Macedonia"), seek review of an order of the Board of Immigration Appeals ("BIA") affirming an order of an Immigration Judge ("IJ") that, in pertinent part, denied petitioners' application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re: Safet Corovic*, No. A 75 829 501 (B.I.A. Dec. 14, 2006), *aff'g* No. A 75 829 501 (Immig. Ct. N.Y. City May 4, 2005). Petitioners contend that the IJ's adverse credibility finding is not supported by substantial evidence because (1) the submission of two allegedly fraudulent documents is insufficient, standing alone, to support an adverse credibility determination; (2) certain evidence should have been excluded from the record because it was obtained in violation of petitioners' confidentiality rights under 8 C.F.R. § 208.6; and (3) the IJ and BIA relied erroneously on (a) excluded evidence and (b) inconclusive evidence. As set forth more fully below, we conclude that the IJ's adverse credibility finding lacked an adequate factual basis and instruct the fact-finder to determine on remand (1) whether one of the documents submitted by Corovic was in fact fraudulent; (2) whether Corovic had reason to know that the documents he submitted were fraudulent; and (3) whether the violations of section 208.6 give rise to a new claim for relief.

## BACKGROUND

Vesmina and Ilda entered the United States in November 1996 as B-2 nonimmigrant visitors, and Corovic entered the United States without inspection in May 1997. In September 1997, Corovic filed an application for asylum, withholding of removal, and CAT relief on the basis of religious and

political persecution, and he included Vesmina and Ilda in that application.[1]  In that application, Corovic alleged that he and his wife were assaulted and tortured because (1) they are Bosnian Muslims and (2) he was affiliated with the Party of Democratic Action ("SDA").  Specifically, Corovic claims that he was arrested in 1995 at an SDA meeting and later beaten by the police; imprisoned for two months as a result of his links to the SDA; fired from his job as an engineer as a result of his involvement; and required to undergo regular interrogations by the police afterwards.  Some time later, he avers, he fled the country.  During his absence, the police allegedly harassed, threatened, and assaulted his wife in order to obtain Corovic's whereabouts.  Thereafter, he asserts, Vesmina and Ilda fled to the United States, where Corovic joined them six months later.

## I.     Evidence and Testimony

In December 1997, Corovic, his wife, and his daughter were each charged with violations of the immigration laws.  Corovic was charged as an inadmissible alien present in the United States without having been admitted or paroled in violation of 8 U.S.C. § 1182(a)(6)(A)(i).  Having remained in the United States past the expiration of their non-immigrant visas, Vesmina and Ilda were charged as removable under 8 U.S.C. § 1227(a)(1)(B).  In April 1998, the Corovics, represented by counsel, appeared before the IJ, conceded the charges, and requested asylum, withholding of removal, or voluntary departure.

At a "merits hearing" in November 1998, Corovic and his wife testified in support of their application.  Corovic submitted multiple documents to corroborate his testimony, including identification documents; Department of State country reports; a certificate dated June 25, 1995 from the MTZ Metal Institute, Corovic's former employer, stating that Corovic was dismissed from employment because of "political activity and being a member of [a] political party which [is] against

---

[1] The instant petition, like the BIA's decision and the IJ's decision, concerns all three of the Corovics, but all of the claims for relief depend primarily on the persecution allegedly suffered by Safet Corovic.

3

[the] policies of [the Metal Institute]" (the "Employment Certificate"); and an April 21, 1995 "court decision" of the County Court Skopje I indicating that Corovic was sentenced to prison "due to enemy activity" resulting from his membership in the SDA (the "Court Decision").

The IJ expressed concern that some of the documents submitted by Corovic appeared to be fraudulent, and in response, the government submitted two consular reports concluding that two of the documents, the Employment Certificate and the Court Decision, were indeed fraudulent ("Exh. 5" and "Exh. 7", respectively, or "Consular Reports" collectively). Corovic presented additional documents in rebuttal, including a January 13, 2000 "confirmation letter" from MTZ Metal Institute stating that Corovic was dismissed because of a "disciplinary measure"; Corovic's worker identification card issued by the Socialist Republic of Macedonia; a letter from a Macedonian judge confirming that the Court Decision was an original court document; and a court certificate from the Principal Court Skopje I with an apostille[2] certifying that the Court Decision was an original court document (the "Court Certification"). The government responded with a forensics report ("Forensic Report") concluding that it was "highly unlikely" that one of Corovic's rebuttal documents, the Court Certification, was "what it purports to be." The author of the Forsensic Report later testified to his findings and methodology.

Corovic testified that he never knowingly submitted any fraudulent documents.

## II. Objections to Consular Reports

At the hearing, Corovic objected to the admission of the two Consular Reports, asserting that they were unreliable and obtained in violation of Corovic's right to confidentiality under 8 C.F.R. §

---

[2] An "apostille" is an international method for verification of foreign documents similar to notarization. Federal Rule of Civil Procedure 44(a)(2)(A)(ii) permits, as evidence of a foreign official record, "the record–or a copy– . . . accompanied . . . by a certification under a treaty or convention to which the United States and the country where the record is located are parties." The Convention Abolishing the Requirement of Legalisation for Foreign Public Documents, Oct. 5, 1981, 527 U.N.T.S. 189, appended to Rule 44, provides for certification by apostille. The Convention requires parties to the Convention to legalize documents exclusively by apostille.

208.6.[3] Corovic maintains that the government violated his right to confidentiality when it submitted the Court Document and the Employment Certificate to the Macedonian government for the purposes of determining whether they were fraudulent. Corovic contends that the submission of such documents without redaction of his name revealed to the Macedonian government that he had applied for asylum in the United States, thereby violating section 208.6 and exposing Corovic and his family to risks at the hands of the same government that he alleges had persecuted him and his family. The IJ overruled Corovic's objections, finding that "[t]here is no evidence as to . . . what procedures were followed by the Consulate and the Consulate being an entity of the Department of State is aware of the confidentiality provisions and is expected to be doing things in its course of business . . . in the correct way."

The IJ did, however, exclude Exhibit 7, the consular report concluding that the Court Decision was fraudulent upon a finding that he was unable to evaluate effectively the report because it did not adequately state the basis for its conclusion. In his subsequent written decision, however, the IJ relied upon this previously-excluded consular report in finding that the Court Decision was fraudulent.

## III. IJ's Decision

In June 2005, the IJ denied Corovic's application for relief, finding that his testimony was not credible. The IJ based this adverse credibility determination on Corovic's "presentation of at least two fraudulent documents," coupled with his failure to offer an adequate explanation for that fraud. The IJ refused to exclude the Consular Reports from evidence based on the confidentiality objection, holding that even though the government of Macedonia was asked directly to authenticate the documents with Corovic's name disclosed, there was "nothing to suggest that the Macedonian government was made

---

[3] 8 C.F.R. § 208.6(a) states:

> Information contained in or pertaining to any asylum application, records pertaining to any credible fear determination conducted pursuant to § 208.30, and records pertaining to any reasonable fear determination conducted pursuant to § 208.31, shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Attorney General.

aware that the documents had been presented in the context of an asylum adjudication." The IJ also concluded that even if Corovic had proved credible, he had not established that his fear of persecution was objectively reasonable.

## IV. BIA Proceedings and Decision

On appeal before the BIA, Corovic argued that: (1) the Consular Reports should have been excluded because they contained "baseless assertions" and were obtained in violation of Corovic's right to confidentiality under 8 C.F.R. § 208.6, *see* note 3, *ante*; (2) the Forensic Report, stating that the Court Decision was likely fraudulent, should have been given little weight because it is "inconclusive"; (3) the IJ failed to consider other corroborating evidence and testimony; and (4) even assuming the Court Decision was fraudulent, that fact cannot support an adverse credibility determination where Corovic had no knowledge of the fraudulence. The BIA affirmed and adopted the IJ's decision, "concur[ring] in the . . . adverse credibility determination" and concluding that, as a result, it "need not consider whether [Corovic] demonstrated past persecution or a well-founded fear of persecution."

On appeal, Corovic raises several arguments challenging the adverse credibility determination. First, Corovic argues that his submission of two allegedly fraudulent documents, without more, does not constitute substantial evidence that he lacked credibility, particularly in light of (1) the absence of a specific finding that Corovic knew that the documents were fraudulent and (2) other evidence and testimony corroborating his claims. Second, he argues that the Consular Reports should have been excluded from evidence because the government violated his confidentiality rights under 8 C.F.R. § 208.6. Third, he asserts that the IJ and BIA erroneously relied on Exhibit 7, the consular report that the IJ had initially excluded from evidence. Finally, Corovic argues that the Forensic Report is inconclusive and should be given no weight. Accordingly, Corovic urges that he should be granted asylum, withholding of removal, and CAT relief because he has met the relevant standards.

The government responds that the IJ's adverse credibility determination was supported by

6

substantial evidence because Corovic did not merely submit a single fraudulent document, but "repeatedly" made fraudulent submissions. In addition,"the record shows that no information concerning [Corovic's] asylum application was disclosed," according to the government, when it sought to authenticate several of Corovic's corroborating documents.

## DISCUSSION

Where the BIA adopts an IJ's decision, we review the IJ's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Where an issue involves the application of law to undisputed fact, we review the issue *de novo*, according the agency's interpretation of its own regulation "substantial deference" unless that interpretation is inconsistent with the plain language of the regulation. *See Zhen Nan Lin v. U.S. Dep't of Justice*, 459 F.3d 255, 262 (2d Cir. 2006).

## I.    Petitioner's right of confidentiality under 8 C.F.R. § 208.6

In *Zhen Nan Lin*, we observed that:

[C]onfidentiality [protected] under 8 C.F.R. § 208.6 is breached when information contained in or pertaining to an asylum application is disclosed to a third party in violation of the regulations, and the unauthorized disclosure is of a nature that allows the third party to link the identity of the applicant to: (1) the fact that the applicant has applied for asylum; (2) specific facts or allegations pertaining to the individual asylum claim contained in an asylum application; or (3) facts or allegations that are sufficient to give rise to a reasonable inference that the applicant has applied for asylum.

459 F.3d at 263 (internal quotation marks, citation, and emphasis omitted); *accord U.S. Dep't of State v. Ray,* 502 U.S. 164, 175-76 (1991) (examining similar claims of confidentiality in the context of a Freedom of Information Act request). The government, in *Zhen Nan Lin*, disclosed (1) the name of petitioner, (2) the fact that he was in contact with the U.S. government, and (3) the fact that U.S. immigration officials were in possession of a particular type of document that gave rise to a "strong inference that the prisoner [was] seeking asylum." *Id.* at 265. We concluded that this disclosure

violated the confidentiality provisions set forth in section 208.6. *Id.* at 268.

The record before us on this petition indicates a similar set of facts. Here, the response from the Macedonian government to the U.S. government's inquiry about the authenticity of the two documents indicated that the Macedonian authorities were aware of (1) petitioner's name; (2) the fact that he was in contact with the U.S. government; and (3) the fact that the U. S. Embassy in Skopje possessed a document stating that the reason for Corovic's previous imprisonment was his political activism. The IJ's conclusion that such an inquiry could also have been a part of a routine employment-visa request is not compelling in light of our reasoning in *Zhen Nan Lin.* *See id.* at 265 ("A certificate of release from a Chinese prison for 'conspiracy of anti-revolution' presented by U.S. State Department and immigration officials is, like the abortion certificate, a document that gives rise to a strong inference that the prisoner is seeking asylum."). We hold that the BIA erred in concluding that the government had not violated section 208.6 in disclosing Corovic's name to the Macedonian authorities.

The resulting question, then, concerns the appropriate remedy. In *Zhen Nan Lin*, we held that "[w]here . . . the document [submitted to the foreign government], if authentic, is evidence that a foreign government violated human rights, that government's 'opinion' as to the document's authenticity is obviously suspect and therefore of questionable probative value." *Zhen Nan Lin*, 459 F.3d at 270. Therefore, a violation of section 208.6 could compel this court, as it did in *Zhen Nan Lin* to "hold that the Consular Report [produced by the foreign government] is inherently unreliable and cannot support the BIA's adverse credibility finding." *Id.* at 272. In the alternative, it might compel us to remand to the IJ for a new determination as to whether the document it submitted for verification is, in fact, fraudulent. *Zhen Nan Lin* further recognized that, in violating section 208.6, "[t]he government through its negligence has potentially exposed [the petitioner] and his family to risks beyond those that . . . caused [them] to flee." *Id.* at 268. We therefore remanded that case, ordering that, on remand, the

BIA evaluate the arguable risk of persecution, independent of the original claim for asylum and withholding of removal, arising from the government's violation of section 208.6. *Id.*

Here, the government has submitted sufficient evidence aside from the Consular Reports obtained in breach of section 208.6, namely, the Forensic Report and the testimony of the Report's author, to establish that the Court Decision was fraudulent. Accordingly the government's breach of section 208.6 does not, in this instance, compel us to disturb the IJ's finding that the Court Decision was fraudulent. With respect to the Employment Certificate, however, the Consular Report was the sole basis for the finding that the Employment Certificate was fraudulent. Accordingly, we direct the fact-finder on remand to consider whether the Employment Certificate was, in fact, fraudulent. We also direct the fact-finder to consider whether the government's breach of confidentiality with respect to both documents gives rise to a new risk of persecution and a new claim for relief based thereon.

## II. The IJ's reliance upon evidence previously excluded

Petitioner's only significant challenge to the IJ's finding that two of the documents were fraudulent concerns the IJ's reliance upon evidence that he had previously excluded. A review of the record indicates that the IJ excluded Exhibit 7 from evidence[4] but nevertheless relied upon it in his written opinion. The BIA's decision also relies upon Exhibit 7. In light of the IJ's exclusion of Exhibit 7, the agency's reliance on that document was error. Because the IJ's finding of fraud with respect to the Court Decision was based on evidence other than Exhibit 7, however, the exclusion of Exhibit 7

---

[4] The relevant portion of the hearing transcript reads as follows:

[The consular report at issue] doesn't say really how they determined that it was fraudulent. Other than its conclusion. That's what I'm concerned about. Because now really I have nothing to go by and so how much weight—how can I assess how much weight to accord it if it doesn't tell me how it reached its conclusion. . . .

All right. *I will keep this document out* but for other reasons not technically raised by [Corovic] but now they have to do with the fact that even if I were to look to the issues raised by the respondent . . . in this case the report really doesn't tell me how the conclusions were arrived at so I'm . . . not able to determine how much weight to accord. So *I'll keep seven out.*

J.A. 350–51 (emphasis added).

9

would not necessarily have altered the IJ's conclusion that the Court Decision was fraudulent, *see ante* at 9. We conclude, therefore, that this error is not a basis for remand.

### III. Adverse credibility determination based exclusively on the petitioner's submission of fraudulent documents

The IJ's adverse credibility determination rested solely on Corovic's presentation of "at least two" fraudulent documents, coupled with his failure to offer an adequate explanation for that fraud. Corovic contends that his submission of allegedly fraudulent documents, standing alone, "is insufficient to hold that [he] lacks credibility where there is no indication or finding that he knew or had reason to know that the documents [were] fraudulent." We agree.

The BIA has concluded that the submission of fraudulent documents and the failure to explain the fraud adequately can form the basis for an adverse credibility determination where the fraudulent documents address a material element of the petitioner's claim for relief. *Matter of O-D-*, 21 I. & N. Dec. 1079 (B.I.A. 1998). We confronted a situation similar, but not identical, to that presented by the instant case in *Borovikova v. U.S. Dep't of Justice*, 435 F.3d 151, 157 (2d Cir. 2006). There, we held that a petitioner's submission of a document that was likely fraudulent could be used to impeach her general credibility. *Id.* at 157–58. We did not explicitly reach the question of whether knowledge was required because, in that case, the disputed issue was whether the documents were indeed fraudulent.

In *Siewe v. Gonzales*, 480 F.3d 160 (2d Cir. 2007), we upheld an IJ's determination that a petitioner who had submitted a fraudulent document lacked credibility. As we explained, "[h]aving found that [one] document was false, the IJ was free to deem suspect other documents (and to disbelieve other testimony) that depend for probative weight upon [petitioner's] veracity." *Id.* at 170. We did, however, note that this reasoning would not apply in cases where a petitioner had submitted evidence that he does not know, or has no reason to know, is not authentic. *Id.* at 171 ("An alien's submission of documentary evidence that the alien does not know, and has no reason to know, is inauthentic, is no basis for *falsus in uno*."); *see also Niang v. Mukasey*, 511 F.3d 138, 141 (2d Cir. 2007)

10

("We hold that where, as here, an applicant's testimony is otherwise credible, consistent and compelling, the agency cannot base an adverse credibility determination solely on a speculative finding that the applicant has submitted inauthentic documents in support of his application."); *Kourski v. Ashcroft*, 355 F.3d 1038, 1040 (7th Cir. 2004) ("[I]f the applicant has no reason to know that [a] document is forged, its existence does not undermine his credibility, though it deprives his testimony of the extra boost to credibility that it would have if it were corroborated."); *Yeimane-Berhe v. Ashcroft*, 393 F.3d 907, 913 (9th Cir. 2004) (concluding that it was improper for an IJ to find an asylum applicant lacking in credibility based on her presentation of a fraudulent document when "[t]here is no evidence that [the applicant] knew that the medical certificate, which was obtained by a third person, was fraudulent" and where the applicant's testimony "was detailed, internally consistent, and consistent with the testimony of her sister and the documents she submitted into evidence"). Neither *Siewe* nor *Borovikova* require an IJ to elicit testimony on the petitioner's knowledge of the fraud or to make a specific finding on this question, but the question of knowledge was not directly contested in those petitions.

Accordingly, we conclude that when an applicant contests that he knowingly submitted a fraudulent document, the IJ must make an explicit finding that the applicant knew the document to be fraudulent before the IJ can use the fraudulent document as the basis for an adverse credibility determination. We need not and do not reach the question of whether the IJ is required to make such a finding when the applicant does not raise the issue of knowledge. Here, Corovic did dispute knowledge, testifying that a friend sent him the rebuttal documents, including the Court Certification that was later determined to be fraudulent; and insisting that he did not knowingly submit fraudulent documents to the immigration court. The government did not disprove Corovic's testimony disavowing knowledge of the fraud, and the IJ did not enter a specific finding that Corovic submitted the fraudulent documents knowingly. Accordingly, the IJ erred in finding that Corovic lacked

11

credibility solely on the basis of his submission of those documents. On remand to the BIA, the fact-finder should evaluate whether Corovic had reason to know that the documents submitted were fraudulent.

## CONCLUSION

For the foregoing reasons, the petition for review is **GRANTED** and the cause is **REMANDED** for further consideration consistent with this opinion. On remand, the fact-finder should determine (1) whether the Employment Certificate was fraudulent; (2) whether Corovic had reason to know that the documents he submitted were fraudulent; and (3) whether the violations of 8 C.F.R. § 208.6 give rise to a new claim for relief.