**Sambaly DANFAKHA, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

Nos. 07–4752–ag (L), 07–5338–ag (Con).

United States Court of Appeals, Second Circuit.

Sept. 26, 2008.

Thomas V. Massucci, New York, NY, for Petitioner.

George G. Katsas, Acting Assistant Attorney General, Linda S. Wernery, Assistant Director, Erica B. Miles, Attorney, Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., for Respondent.

PRESENT: Hon. ROSEMARY S. POOLER, Hon. ROBERT A. KATZMANN and Hon. RICHARD C. WESLEY, Circuit Judges.

### SUMMARY ORDER

Petitioner Sambaly Danfakha, a native and citizen of Senegal, seeks review of a September 26, 2002 order of the BIA affirming the November 5, 1999 decision of Immigration Judge ("IJ") William F. Jankun denying Danfakha's application for asylum and withholding of removal. *In re Sambaly Danfakha*, No. A70 889 762 (B.I.A. Sep. 26, 2002), *aff'g* No. A70 889 762 (Immig. Ct. N.Y. City Nov. 5, 1999). Danfakha also seeks review of the November 8, 2007 order of the BIA denying his motion to reopen. *In re Sambaly Danfakha*, No. A70 889 762 (B.I.A. Nov. 8, 2007). We assume the parties' familiarity with the underlying facts and procedural history of the case.

### I. Docket No. 07–4752–ag (L): Asylum and Withholding of Removal

When the BIA summarily affirms the decision of the IJ without issuing an opinion, *see* 8 C.F.R. § 1003.1(e)(4), we review the IJ's decision as the final agency determination. *See, e.g., Twum v. INS,* 411 F.3d 54, 58 (2d Cir.2005); *Yu Sheng Zhang v. U.S. Dep't of Justice,* 362 F.3d 155, 159 (2d Cir.2004). We review the agency's factual findings, including adverse credibility findings, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Corovic v. Mukasey,* 519 F.3d 90, 95 (2d Cir.2008). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 406 (2d Cir.2005); *Tian–Yong Chen v. INS,* 359 F.3d 121, 129 (2d Cir.2004); *see also Xiao*

*Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 335 (2d Cir.2006) (agreeing with this principle, but avoiding remand, in spite of deficiencies in an adverse credibility determination, because it could be confidently predicted that the IJ would adhere to the decision were the case remanded).

We conclude that the IJ's adverse credibility determination was supported by substantial evidence. The IJ reasonably found that Danfakha failed to credibly establish that he is from the Casamance region of Senegal. Indeed, Danfakha's original asylum application and the identity documents he submitted all stated that he is from the village of Tessan, in the region of Tambacounda. While Danfakha testified that his town is located on the border of the Casamance region, the IJ did not err in finding this explanation insufficient to overcome the discrepancy. *See, e.g., Majidi v. Gonzales,* 430 F.3d 77, 80–81 (2d Cir.2005). Indeed, Danfakha's claim was based on his assertion that he and his family were persecuted by Casamance rebels because of his Casamance origins. *See, e.g., Secaida–Rosales v. INS,* 331 F.3d 297, 308–09 (2d Cir.2003). Thus, even if Danfakha is from a region that borders Casamance, the discrepancy is substantial when measured against the record as a whole. *See id.*

The IJ also found that Danfakha testified inconsistently with his amended application regarding: (1) whether his brother was kidnapped before or after their father's alleged death; (2) whether his mother disappeared during a 1985 rebel attack before he left Senegal; (3) whether his fianceé was with him during the attack; and (4) whether it took him seven or fifteen days to reach Gambia after escaping from the rebels. In his brief to this Court, Danfakha concedes that these discrepancies "clearly exist in the record." Thus, the IJ reasonably relied on them in sup-

port of his adverse credibility finding, particularly as these findings are material to Danfakha's claim. *See Majidi*, 430 F.3d at 80.

While we agree with Danfakha as to one of the IJ's findings,[1] remand would be futile in this case, as we can confidently predict that the agency would reach the same conclusion on remand. *See Xiao Ji Chen*, 471 F.3d at 339. When considered as a whole, the agency's error-free findings provided substantial evidence in support of the IJ's adverse credibility determination. Because the only evidence of a threat to Danfakha's life or freedom depended upon his credibility, the adverse credibility determination in this case necessarily precludes success on his claims for asylum and withholding of removal. *See Paul v. Gonzales*, 444 F.3d 148, 156 (2d Cir.2006); *Wu Biao Chen v. INS*, 344 F.3d 272, 275 (2d Cir.2003). Finally, because the IJ's adverse credibility determination is dispositive of Danfakha's petition for review in Docket No. 07–4572–ag (L), we need not reach the IJ's alternate findings regarding relocation and resettlement.

## II. Docket No. 07–5338–ag (Con): Motion to Reopen

We review the BIA's denial of a motion to reopen for abuse of discretion. *See Kaur v. BIA*, 413 F.3d 232, 233 (2d Cir. 2005) (per curiam). "An abuse of discretion may be found ... where the [BIA's] decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary or capricious manner." *Ke Zhen Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 93 (2d Cir.2001) (internal citations omitted).

It is beyond dispute that Danfakha's motion to reopen was untimely. *See* 8 C.F.R. § 1003.2(c)(2). Furthermore, the BIA did not abuse its discretion in finding he failed to show changed circumstances in Senegal that would excuse the untimely filing of his motion. *See* 8 C.F.R. § 1003.2(c)(3)(ii). Indeed, Danfakha produced no evidence as to how country conditions in Senegal have changed since the BIA's September 2002 decision with respect to how those who oppose FGM are treated in Senegal. To the extent Danfakha claimed that threats from his family in Senegal constituted changed circumstances, the BIA did not err in finding that his assertions were too vague to support reopening. *See INS v. Abudu*, 485 U.S. 94, 110, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988) (finding that a party seeking reopening bears a "heavy burden"); *see also* 8 C.F.R. § 1003.2(c)(1).

Because the BIA's finding that Danfakha failed to show changed country conditions was alone sufficient to support the denial of his motion to reopen, we need not reach the BIA's finding that he failed to establish his *prima facie* eligibility for relief. *See Abudu*, 485 U.S. at 105–06, 108 S.Ct. 904. Nonetheless, we note that we find record support for the BIA's observation that "FGM has been illegal in Senegal since 1999, that the government has prosecuted those practicing FGM and has fought to end the practice with some success, and that FGM is less common in certain geographic areas in Senegal, including urban centers."

For the foregoing reasons, the consolidated petitions for review are DENIED. The pending request for oral argument in these petitions is DENIED in accordance with Federal Rule of Appellate Procedure

---

1. As Danfakha argues, there is no support in the record for the IJ's finding that he testified inconsistently regarding the details of his father's death.

34(a)(2), and Second Circuit Local Rule 34(b).