08-1445-AG
Kone v. Holder

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2009

(Argued: August 31, 2009                    Decided: February 25, 2010)

Docket No. 08-1445-ag

_____

NAN MARIE KONE,

*Petitioner,*

— v.—

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,[*]

*Respondent.*

_____

B e f o r e:

CALABRESI, CABRANES, AND LYNCH, *Circuit Judges.*[**]

_____

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr., is automatically substituted as respondent in this case.

[**] When the case was argued, Judge Lynch was United States District Court for the Southern District of New York, sitting by designation.

Petition for review of a final order of the Board of Immigration Appeals affirming the decision of Immigration Judge Sandy K. Hom denying petitioner Nan Marie Kone's application for asylum, withholding of removal, and relief under the CAT.  Because the agency improperly shifted the burden of proof to Kone to demonstrate future persecution, and failed to consider the relevant circumstances in finding Kone less than credible, we grant the petition, vacate the order of removal, and remand the case.

VACATED and REMANDED.

---

BRIAN I. KAPLAN, Goldberg & Kaplan, LLP, New York, New York, *for Petitioner*.

ANDREW B. INSENGA, Trial Attorney (Gregory G. Katsas, Assistant Attorney General, and Carol Federighi, Senior Litigation Counsel, *on the brief*), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., *for Respondent*.

---

GERARD E. LYNCH, *Circuit Judge*:

Petitioner Nan Marie Kone, a native and citizen of Côte d'Ivoire,[1] petitions for review of an order of the Board of Immigration Appeals ("BIA"), affirming the decision

---

[1] Although it is often referred to by English-speakers as "the Ivory Coast," "Côte d'Ivoire" is the official name of the country in English, as noted by the United States Board on Geographic Names, the body charged with maintaining uniform geographic name usage throughout the federal government.  See U.S. Board on Geographic Names, Geopolitical Entity Names and Digraph Codes, available at http://earth-info.nga.mil/gns/html/Geopolitical%20Entity%20Names%20and%20Digraph%20Codes%20Independent%20States.pdf.

of the Immigration Judge ("IJ"), denying Kone's applications for asylum, withholding of removal under 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture ("CAT")[2] based on female genital mutilation, religious, ethnic and political persecution, and Kone's fears that her daughters would be forcibly subjected to genital mutilation against Kone's wishes if she were removed. See In re Kone, A98-977-450 (B.I.A. Feb. 27, 2008), aff'g A98-977-450 (Immig. Ct. N.Y. City Apr. 11, 2006). We find that the agency doubly erred in its treatment of Kone's voluntary return trips to Côte d'Ivoire and that these errors compel a remand. First, the agency inappropriately rebutted the presumption of future persecution to which Kone was entitled based solely on Kone's voluntary return trips to her native country. Second, even if the burden were on Kone to prove a likelihood of future persecution, the agency's adverse credibility determination on this point is corrupted by reliance upon an erroneous factual finding and the failure to adequately consider the relevant circumstances. Because we cannot predict with confidence that the agency would reach the same result on remand absent these errors, we grant the petition for review, vacate the decision of the BIA, and remand the case for further proceedings consistent with this opinion. Additionally, we note that on remand, the parties and the agency may wish to consider Kone's eligibility for asylum without regard to a well-founded fear of future persecution under the portion of the asylum statute

[2] The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85. See 8 C.F.R. § 1208.16(c) (implementing the CAT).

3

frequently referred to as "humanitarian asylum." See Jalloh v. Gonzales, 498 F.3d 148, 151 (2d Cir. 2007).

**BACKGROUND**

Kone last entered the United States on January 15, 2005, on a non-immigrant tourist visa, with permission to remain for six months. In May 2005, Kone applied for asylum, withholding of removal, and protection under the CAT. In July 2005, upon the expiration of her tourist visa, Kone was charged as removable from the United States by service of a Notice to Appear. In removal proceedings, Kone, through counsel, conceded removability, relying entirely on her applications for asylum and related forms of relief to prevent her removal to Côte d'Ivoire.

**I.  Claim of Persecution**

In support of her applications, Kone claimed that she had been persecuted in Côte d'Ivoire by being subjected to genital mutilation, and feared that her two daughters, both United States citizens, would be subjected to such mutilation if she were removed. Kone also alleged persecution because of her Dioula ethnicity, her Muslim religion, and as a member of the opposition political group "Rally of the Republicans" ("RDR"), which is associated with the Dioula people. Through her Form I-589 asylum application and in testimony before the IJ, Kone provided the following account:

Born on September 30, 1973, in Abidjan, Côte d'Ivoire, Kone recalls that when she was eight years old,

4

[t]wo . . . old ladies and my grandmother pushed me on the ground. They held my hands and opened my feet widely while [a] third old lady cut my private parts with an old and dirty knife. She cut my clitoris at the base. The pain was so unbearable that I passed out. I was bleeding heavily. There was no anesthesia to calm the pain. When I woke up, I was covered with sheets. I was still bleeding and the pain was too much for me. No one ever took me to the hospital or even call[ed] a doctor.

Those old ladies have no medical experience. My grandmother put herbs on the wound. They cleaned it and made a potion made of boiled herbs hoping to stop the bleeding. I suffered a lot. I felt my private parts burning every time I urinated.

Kone continues to suffer from this procedure, physically and emotionally, with "painful and disorganized periods" and a "very painful pregnancy and delivery."

As an adult, Kone traveled back and forth between Côte d'Ivoire and the United States several times before seeking asylum. She first came to the United States on a visitor's visa in July 2002, and returned to Côte d'Ivoire a month later. On November 15, 2002, while Kone was back in Côte d'Ivoire, the government arrested many members of the RDR political opposition party, including Kone, who had been a rank and file member since 1999. On that day, while Kone was at work at the National Agency for Rural Development ("ANADER") – a private firm in Abidjan, where she had worked as a cashier since finishing high school – two police officers found Kone carrying an RDR membership card and arrested her. Kone was jailed for ten days, during which time she was beaten daily, denied drinking water, and required to walk naked in front of the

5

guards, one of whom attempted to rape her. Upon her release, the guards warned Kone that they would catch and kill her if she continued to support the RDR.

After this incident, Kone and her family discussed the possibility of her fleeing Côte d'Ivoire. At that point, however, Kone was optimistic that the political and ethnic strife in the country would resolve, and accordingly, she remained in Côte d'Ivoire, and continued her employment with ANADER.

Kone did, however, travel to the United States between March and September 2003, and during this second visit had a baby daughter. On September 13, 2003, Kone returned with her daughter to Côte d'Ivoire, where they stayed for two months before coming back to the United States on November 15 for a pediatric checkup.

Five days after Kone and her daughter came to the United States, Kone's father was killed while praying at a mosque in Abidjan that was stormed by armed supporters of Côte d'Ivoire's president. Kone remained in the United States for several months following this incident, returning to Côte d'Ivoire in March 2004. This time, Kone only remained in Côte d'Ivoire for two months before she returned to the United States.

Kone's last trip to Côte d'Ivoire occurred in October 2004. She had been back in Côte d'Ivoire for several weeks when the government bombed Dioula towns, killing more than 250 people. Because of the situation for the Dioula people, combined with the pressure Kone faced from her family to subject her daughter – who was nearing the age at which young girls in Côte d'Ivoire are subjected to genital mutilation – to that procedure,

6

Kone resolved to leave the country for good.

Kone departed Côte d'Ivoire for the last time on January 11, 2005. She was admitted to the United States a few days later on a temporary visa and timely applied for asylum. While the application was pending, Kone gave birth to a second daughter.

**II.     Prior Proceedings**

On April 11, 2006, IJ Sandy K. Hom denied Kone's petition for asylum, withholding of removal and protection under the CAT. The IJ framed the dispositive issues as whether Kone "was a victim of past persecution and if so, does she [have] a well-founded fear of future persecution or is it rebutted by the [her] continual and frequent return to the Ivory Coast," and whether Kone has a fear of future persecution based on the birth of her daughters. In re Kone, A98-977-450 (Immig. Ct. N.Y. City Apr. 11, 2006). The IJ found credible Kone's account of her experience of genital mutilation, which was corroborated by an expert medical report. He further accepted – as evidenced by the statement that a presumption of future persecution arose out of Kone's past persecution – that this experience constituted persecution. As foreshadowed by the framing of the inquiry, however, the IJ found that Kone's voluntary return trips to Côte d'Ivoire rebutted the presumption of future persecution. The IJ rejected Kone's other claims of persecution on an adverse credibility finding, primarily in light of Kone's voluntary returns to Côte d'Ivoire and of what the IJ believed was her employment by the government, following these events. The IJ extended this adverse credibility finding to

7

negate Kone's assertion of a fear of future persecution. As to Kone's daughters, the IJ held that Kone lacked standing to assert a claim for asylum or withholding of removal based on a fear that her daughters would be mutilated if Kone were removed to Côte d'Ivoire. Finally, the IJ denied CAT relief, finding in a cursory manner that Kone failed to demonstrate that it was more likely than not that she would be tortured if she returned to Côte d'Ivoire or that she could not receive protection from the government there.

On February 27, 2008, the BIA, in a short two-paragraph opinion, adopted and affirmed the IJ's decision. In re Kone, A98-977-450 (B.I.A. Feb. 27, 2008). The BIA specifically concurred in the IJ's adverse credibility determination, finding that Kone failed to offer a credible explanation for returning to Côte d'Ivoire on multiple occasions after the events giving rise to her persecution claims. The BIA further held that "[t]he Immigration Judge also correctly concluded that [Kone's] fear that her United States citizen daughters will be subjected to female genital mutilation is not a legally valid basis for the respondent's persecution claim." Id.

This petition for review followed. Kone argues that substantial evidence does not support the agency's adverse credibility determination, and that she has established eligibility for asylum, withholding of removal and relief under the CAT because she was subjected to genital mutilation as a child, fears that her daughters would similarly be forcibly mutilated if she were removed, and because of the ongoing political and ethnic conflict in which she fears for herself as a Diolua in Côte d'Ivoire.

8

**DISCUSSION**

**I.**    **Legal Standards**

"Where, as here, the BIA has adopted and supplemented the IJ's decision, we review the decision of the IJ as supplemented by the BIA." Delgado v. Mukasey, 508 F.3d 702, 705 (2d Cir. 2007). Legal issues, and the application of law to fact, are reviewed de novo. Roman v. Mukasey, 553 F.3d 184, 186 (2d Cir. 2009). An agency's interpretation of its own regulation is accorded "'substantial deference' unless that interpretation is inconsistent with the plain language of the regulation." Corovic v. Mukasey, 519 F.3d 90, 95 (2d Cir. 2008), quoting Zhen Nan Lin v. U.S. Dep't of Justice, 459 F.3d 255, 262 (2d Cir. 2006). The agency's factual findings, including adverse credibility findings, are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Accordingly, such findings are reviewed under the substantial evidence standard, which requires that they be supported by "reasonable, substantial and probative evidence in the record when considered as a whole." Iouri v. Ashcroft, 487 F.3d 76, 81 (2d Cir. 2007), quoting Wu Biao Chen v. INS, 344 F.3d 272, 275 (2d Cir. 2003) (internal quotation marks omitted). To meet this standard, "an adverse credibility determination must be based on specific, cogent reasons that bear a legitimate nexus to the finding." Balachova v. Mukasey, 547 F.3d 374, 380 (2d Cir. 2008) (internal quotations omitted); accord, Lin Zhong v. U.S. Dep't of Justice, 480 F.3d 104, 117 (2d Cir. 2007). "We will vacate and remand for new

findings . . . if the agency's reasoning or its factfinding process was sufficiently flawed." Xiao Kui Lin v. Mukasey, 553 F.3d 217, 220 (2d Cir. 2009).

"Asylum is a discretionary form of relief that hinges on persecution in the applicant's country of nationality." Delgado, 508 F.3d at 705. To be eligible for asylum, a petitioner must establish that she is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42), either because she has been persecuted on account of "race, religion, nationality, membership in a particular social group, or political opinion" or because of a well-founded fear that, if removed, she will be persecuted on account of one of those protected grounds. Dong Zhong Zheng v. Mukasey, 552 F.3d 277, 284 (2d Cir. 2009); Tao Jiang v. Gonzales, 500 F.3d 137, 140 (2d Cir. 2007).[3] A petitioner may thus, in certain circumstances, establish asylum eligibility on the basis of the past persecution without regard to any well-founded fear of future persecution in what is frequently referred to as "humanitarian asylum." Jalloh, 498 F.3d at 151. This relief is reserved for persecuted aliens whose persecution was particularly severe or who may suffer "other

---

[3] In relevant part, 8 U.S.C. § 1101(a)(42) defines a "refugee" as:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling or unable to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42).

10

serious harm" if removed. 8 C.F.R. § 1208.13(b)(1)(iii). Absent humanitarian asylum, an asylum applicant must demonstrate a well-founded fear of persecution, which "is 'a subjective fear that is objectively reasonable. A fear is objectively reasonable even if there is only a slight, though discernable, chance of persecution.'" Dong Zhong Zheng, 552 F.3d at 284, quoting Tamabadou v. Gonzales, 446 F.3d 298, 302 (2d Cir. 2006). Withholding of removal under 8 U.S.C. § 1231(b)(3), unlike asylum, is a mandatory form of relief reserved for aliens who demonstrate a clear probability of future persecution on account of a protected characteristic. Vumi v. Gonzales, 502 F.3d 150, 153 (2d Cir. 2007); see also 8 C.F.R. § 1208.16(b) (alien must show that her "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion").

Protection under the CAT, like withholding of removal, is a mandatory form of relief. It requires the applicant to "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Unlike asylum and withholding of removal, "CAT relief does not require a nexus to a protected ground," Delgado, 508 F.3d at 708, but it does require the "acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a).

**II.     Presumption of Future Persecution**

An alien who demonstrates past persecution benefits from the presumption that

11

the applicant faces a threat of future persecution for purposes of either asylum or withholding of removal. 8 C.F.R. §§ 1208.13(b)(1) (asylum) & 1208.16(b)(1)(i) (withholding of removal); see also Baba v. Holder, 569 F.3d 79, 86 (2d Cir. 2009) ("The law is clear that a showing of past persecution shifts the burden to the government on the question of the petitioner's well-founded fear of future persecution."); Li Hua Lin v. U.S. Dep't of Justice, 453 F.3d 99, 105 (2d Cir. 2006) ("A rebuttable presumption of withholding eligibility attaches to an applicant who demonstrates that she suffered past persecution based on one of the enumerated grounds."). The burden rests firmly with the government to rebut this presumption by showing, by a preponderance of the evidence, either a "fundamental change in circumstances such that the applicant's life or freedom would not be threatened on account of any of the five [protected] grounds . . . upon the applicant's removal" or the reasonable possibility of internal relocation within the country of removal. 8 C.F.R. § 1208.16(b)(1)(i)-(ii); accord, 8 C.F.R. § 1208.13(b)(1)(i)-(ii).

It is well-settled that a woman such as Kone who has undergone genital mutilation may have been persecuted through this experience on account of her membership in a particular social group. E.g., Bah v. Mukasey, 529 F.3d 99, 112-13 (2d Cir. 2008); In re Kasinga, 21 I. & N. Dec. 357 (B.I.A. 1996) (en banc). Here, the IJ found that Kone was a victim of such mutilation and that this constituted persecution. Nevertheless, the agency denied Kone asylum and withholding of removal for insufficient evidence that Kone would be persecuted in the future if removed to Côte d'Ivoire. This was error, for the IJ

12

improperly placed the burden on Kone to demonstrate a likelihood of future persecution.[1]

The IJ simply stated that Kone's "voluntary actions to go back to the Ivory Coast . . . rebuts the presumption of future persecution that arises from her past persecution," In re Kone, A98-977-450 (Immig. Ct. N.Y. City Apr. 11, 2006), and the BIA did not address the issue.[2] This cursory analysis neglects to make the specific finding required by the

---

[1] We reject the government's suggestion that Kone has waived appellate review of this issue by failing to meaningfully address it in her opening brief. Kone's brief repeatedly argues that the government failed to rebut the presumption of future persecution to which she is entitled, and we find this satisfactorily raises the issue for our review. See Biao Yang v. Gonzales, 496 F.3d 268, 277 n.7 (2d Cir. 2007). Ironically, it is the government that has waived a potentially valid argument here. For, although Kone sufficiently challenged the IJ's shifting of the burden of proof to prove persecution in her opening brief before us, she did not specifically challenge this aspect of the IJ's decision in her appeal to the BIA. While the government argues that Kone has waived the issue by not adequately addressing it here, the government does not point out Kone's non-exhaustion before the agency. The government's neglect opens the door for our review. For, while issue exhaustion is mandatory, it "is a prudential doctrine subject to waiver [by the government] rather than a bar to our jurisdiction." Karaj v. Gonzales, 462 F.3d 113, 119 n.2 (2d Cir. 2006); accord, Lin Zhong, 480 F.3d at 107. As a result, we retain jurisdiction to consider this issue and find that the government has waived objection to Kone's failure to exhaust.

[2] Although the IJ explicitly found the presumption of future persecution rebutted only in the context of Kone's asylum claim, in light of the similar standards governing when such presumptions arise and what the government must show to rebut them in the context of asylum and withholding of removal claims, we assume the IJ's withholding of removal analysis, in which the IJ simply stated that "evidence is lacking and insufficient that [Kone] would be a victim of any future persecution, if she was to return," In re Kone, A98-977-450 (Immig. Ct. N.Y. City Apr. 11, 2006), implicitly incorporated the earlier presumption rebuttal. Indeed, it would seem that a showing sufficient to rebut the presumption of future persecution in the asylum context would automatically suffice to rebut the presumption in the withholding of removal context (though not necessarily the other way around). To the extent, however, that this assumption is erroneous, the IJ erred more fundamentally in failing to shift the burden to the government in the first instance upon Kone's showing of past persecution. See Makadji v. Gonzales, 470 F.3d 450, 458 (2d Cir. 2006) ("Because the IJ did not shift the burden from Makadji to the government upon his showing of past

13

regulations of either a fundamental change in circumstances or the possibility of internal relocation, see 8 C.F.R. § 1208.13(b)(1) ("That presumption may be rebutted if an asylum officer or immigration judge makes one of the findings described in paragraph (b)(1)(i) of this section."); accord, 8 C.F.R. § 1208.16(b)(1)(i), and suggests the erroneous belief that voluntary return trips are sufficient, as a matter of law, to rebut the presumption of future persecution to which Kone is entitled. But this cannot be the case because the mere fact of such trips, standing alone, does not suggest either any fundamental change in circumstances or the possibility of internal relocation. In Boer-Sedano v. Gonzales, the Ninth Circuit noted that "return trips can be considered as one factor, among others, to rebut this presumption," but it rejected the contention that "the existence of return trips standing alone" could do so. 418 F.3d 1082, 1091-92 (9th Cir. 2005). We adopt the Ninth Circuit's position on this question. Because we cannot confidently predict whether the IJ would make either of the requisite findings necessary to rebut the presumption absent this legal error, a remand is warranted. See, e.g., Manzur v. U.S. Dep't. of Homeland Sec., 494 F.3d 281, 290 (2d Cir. 2007).

Bah v. Mukasey is instructive in assessing the government's burden to demonstrate a fundamental change in circumstances. That case involved three women from Guinea who had been genitally mutilated. 529 F.3d at 101. The BIA assumed that each of the three women had been persecuted on account of her membership in a particular social

persecution, the denial of withholding of removal was in error.").

14

group, but denied the women withholding of removal on a finding that the fact that the mutilation had already occurred automatically rebutted the presumption of future persecution. Id. at 101, 114. We found significant error in the BIA's conclusion that the fact that the women had already undergone mutilation in and of itself rebutted the presumption of future persecution, and its concomitant failure to shift the burden of proof to the government to demonstrate, by a preponderance of the evidence, that "changed conditions obviate the risk to life or freedom related to the original claim, e.g., persecution on account of membership in [each petitioner's] particular social group." Id. at 115; see also id. at 114. Finding that "nothing in the regulation suggests that the future threats to life or freedom must come in the same *form* or be the same *act* as the past persecution," we held that a remand was required as "the records below provide ample evidence that Guinean and/or Fulani women are routinely subjected to various forms of persecution and harm beyond genital mutilation," citing, as examples, evidence provided by the State Department's Country Report on Guinea that domestic violence, rape, and sex trafficking were serious problems in that country. Id. at 115-16.[3]

In this case, although the IJ did not articulate the grounds on which Kone was persecuted, it is likely that, as in other cases involving genital mutilation, the persecution was on account of her membership in a social group defined by Kone's "gender –

_____

[3] Bah also held that the BIA erred in assuming categorically that female genital mutilation is a "one-time" act without shifting the burden to the government to show that the particular petitioners in the case were not at risk of further mutilation. Id. at 114.

15

combined with [her] ethnicity, nationality, or tribal membership." Id. at 112-13. In striking similarity to Bah, the record "provide[s] ample evidence that [Ivorian] and/or [Dioula] women are routinely subjected to various forms of persecution and harm beyond genital mutilation." Id. at 116. Indeed, largely paralleling the evidence Bah found required a remand, the 2005 State Department Country Report on Human Rights Practices for Côte d'Ivoire, included as part of Kone's asylum application, indicates that "the law does not prohibit domestic violence, and it [is] a problem," "rape [is] a problem" and "women who reported rape or domestic violence to the police were often ignored." U.S. Dep't of State, 2005 Country Report on Human Rights Practices: Côte d'Ivoire, at 17 (Mar. 8, 2006), available at http://www.state.gov/g/drl/rls/hrrpt/2005/61565.htm. Here, again, as in Bah, the government "did not even attempt to argue that [Kone] would not be subject to forms of persecution other than genital mutilation on account of [her] membership in [a] particular social group[] upon return" to Côte d'Ivoire. Bah, 529 F.3d at 116.

The government urges that the fact that Kone was able to return to Côte d'Ivoire on several occasions without incident is sufficient to meet its burden to show a fundamental change in circumstances.[4] We disagree. The simple fact of a safe return on

---

[4] The government did not so argue before the IJ (and the record on appeal does not contain the government's brief to the BIA; indeed, it is unclear if it even filed one). Rather, the government merely argued that Kone's return trips undermined her credibility, a point discussed infra.

a particular occasion does not negate the potential of future harm. Nothing in the regulations requires an applicant to show that she would be immediately persecuted upon return, that persecution would be likely to occur within some short time span, or that it would occur in regular intervals. To the contrary, the regulations speak broadly of the future; "to rebut the regulatory presumption, the government must show that changed conditions obviate the risk [of future persecution] related to the original claim." Id. at 115. Kone's return trips no more demonstrate a fundamental change in circumstances than does Kone's apparent ability to escape further persecution on account of her membership in a particular social group in the approximately twenty-year interval from the time she was genitally mutilated to the time she first traveled to the United States. While return trips may provide some evidence of a relevant change in circumstances, they do not supply the requisite preponderance of evidence. The government cannot satisfy its burden to demonstrate that Kone will not be threatened simply by showing that she enjoyed periods with no new persecution or that she will not perpetually be persecuted in her native country.[5]

Accordingly, as in Bah, the agency failed to give Kone the full benefit of the regulatory presumption to which she is entitled and to hold the government to its evidentiary burden. The fact that Kone voluntarily returned to Côte d'Ivoire on several

_____

[5] Moreover, Kone enjoys a regulatory presumption that "internal relocation would not be reasonable," 8 C.F.R. §§ 1208.13(b)(3)(ii), 1208.16(b)(3)(ii), and nothing about her return trips to Abidjan, the site of the original persecution, suggests anything to the contrary.

17

occasions does not, in and of itself, establish the requisite preponderance of the evidence that Kone would not be further persecuted if returned, once again, to Côte d'Ivoire. Accordingly, a remand is warranted.

**III.    Adverse Credibility**

Besides erroneously using Kone's return trips to dispositively rebut the presumption of future persecution, the IJ also found Kone not credible – with respect to both her claim of past persecution unrelated to genital mutilation and her fear of future persecution – based, in substantial part, on such return trips. While voluntary return trips may be relevant to credibility in the exercise of an IJ's informed discretion, return trips alone are insufficient to establish lack of credibility. Under various circumstances, a person very well might risk persecution to return to his or her home country, despite previous persecution or a well-founded fear of future persecution. Accordingly, we agree with the Seventh Circuit that

> [a] proposition that *any* voluntary return to one's home country renders any claim regarding past and future persecution incredible would be far too broad a proposition to serve as a working rule for assessing an alien's testimony. Although we have recognized that return travel might be an appropriate factor weighing against an alien's credible fear, each case must be considered in light of its own specific facts. There well may be circumstances when a person who legitimately fears persecution nevertheless might elect to return temporarily to his home country. Health conditions made worse abroad, health condition of family members and other major life events might drive a person to choose to take certain risks and return home, while doing his best to mitigate them.

18

Tarraf v. Gonzales, 495 F.3d 525, 534 (7th Cir. 2007). In short, it is not enough for the agency simply to find that return trips undermine an applicant's credibility; a more nuanced consideration of the circumstances surrounding such returns is required.

Here, the IJ did not rely solely on Kone's return trips to support the adverse credibility determination. The only additional factor the IJ relied upon, however, was the erroneous assumption that on her return, Kone continued to be employed by the Ivorian government. This was clear error, as there was no evidence in the record that Kone *ever* worked for the government in any capacity. Rather, the IJ appears to have mistakenly speculated that Kone worked for the government based upon the name of Kone's employer. But Kone explicitly stated in her asylum application that her employer, the "National Agency for Rural Development (ANADER)," is "a private firm at Abidjan." This testimony stands uncontradicted by other evidence. As a result, the IJ's belief that Kone worked for the government upon her returns to Côte d'Ivoire is unsupported by substantial evidence. See, e.g., Iouri, 487 F.3d at 81 (factual finding meets substantial evidence standard only if supported by "reasonable, substantial and probative evidence in the record when considered as a whole").

We need not address the Government's argument that the IJ's factual error is harmless. The IJ's credibility determination was based solely on two errors: that Kone worked for the government, and that the bare fact of Kone's return trips, without any analysis of the circumstances of those return trips, rendered her fear not credible.

19

Because we cannot confidently predict that absent these errors the IJ would have adhered to its determination,[6] a remand is warranted. See Li Hua Lin, 453 F.3d at 111 ("The more central an errant finding was to the IJ's adverse credibility determination, naturally, the less confident we can be that remand would be futile."). As this adverse credibility determination necessarily infected all three claims to relief, which share common factual predicates, the BIA's ruling on the entire petition must be vacated and remanded for reconsideration. See Xue Hong Yang v. U.S. Dep't of Justice, 426 F.3d 520, 523 (2d Cir. 2005).[7]

---

[6] The BIA's adoption of the IJ's adverse credibility determination, finding that Kone offered no "credible explanation for" her "return from the United States on multiple occasions, to [the] Ivory Coast after the events which give rise to her persecution claim," In re Kone, A98-977-450 (B.I.A. Feb. 27, 2008), does not save the IJ's credibility determination. Granted, Kone's explanation that she returned to Côte d'Ivoire simply because she preferred her country and she hoped the situation would improve might be insufficient. However, there is no indication that the IJ considered this explanation, and, under the applicable regulations – which provide that "[f]acts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed [by the BIA] only to determine whether the findings of the immigration judge are clearly erroneous," 8 C.F.R. § 1003.1(d)(3)(i) – the BIA is not empowered to "substitut[e] its judgment for the IJ's." Fen Yong Chen v. Bureau of Citizenship & Immig. Servs., 470 F.3d 509, 514 (2d Cir. 2006). Accordingly, the IJ's failure to consider the relevant circumstances, coupled with its reliance on an erroneous finding, is what matters here.

[7] We note that if, on remand, the agency finds Kone credible, Kone's arrest and detention might well constitute an additional instance of persecution, with all of the presumptions of future persecution that follow. As we have previously held, "[d]aily beatings, a near-starvation diet, and a death threat, administered by the national police during a week-long detention in harsh prison conditions and inflicted by reason of one's membership in an opposition political party, satisfy the standard for persecution on account of political opinion." Baba, 569 F.3d at 81. Kone's account of her ten-day detention, which included many analogous elements – daily beatings, denial of drinking water, a death threat – plus attempted rape, would thus appear to meet the standard of persecution. The threshold

20

## IV. Asylum Based on Past Persecution

Because the case must be remanded in any event, the parties and the agency may well wish to consider another issue that the parties appear to have overlooked.

Although withholding of removal hinges on a likelihood of future persecution, a well-founded fear of future persecution is not a necessary prerequisite to asylum eligibility. As is clear from the text of the statute, "an applicant can obtain refugee status" – and thus asylum eligibility – "by demonstrating past persecution *or* a well-founded fear of [future] persecution." Guan Shan Liao v. U.S. Dep't of Justice, 293 F.3d 61, 67 (2d Cir. 2002) (emphasis added). In the words of the governing statute, "[t]o establish that the applicant is a refugee . . . the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion *was or will be* at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added). See also Aliyev v. Mukasey, 549 F.3d 111, 116 (2d Cir. 2008) ("[P]ast persecution may be sufficient, on its own, to establish eligibility for asylum. . . ."). Accordingly, the regulations provide two avenues for such a grant of humanitarian asylum without regard to a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1)(iii).

First, an applicant may be eligible for asylum if, based on the "severity of the past persecution," she "has demonstrated compelling reasons for being unwilling or unable to

---

question, of course, is whether Kone is credible.

21

return to the country." 8 C.F.R. § 1208.13(b)(1)(iii)(A). A grant of asylum under this theory is reserved for "atrocious forms of persecution," Matter of Chen, 20 I. & N. Dec. 16, 19 (B.I.A. 1989), and requires an alien to "establish both 'the severe harm and the long-lasting effects of that harm,'" Jalloh, 498 F.3d at 151, quoting In re N-M-A-, 22 I. & N. Dec. 312, 326 (B.I.A. 1998).

The BIA has recognized that humanitarian asylum may be appropriate in certain cases of female genital mutilation. In Matter of S-A-K- and H-A-H-, 24 I. & N. Dec. 464 (B.I.A. 2008), the BIA granted asylum to a mother and daughter who had been subjected to genital mutilation in Somalia, and who testified to the "aggravated nature of the procedure[s]" performed on them. Id. at 465. Under such circumstances, the BIA held that "[w]hether or not the respondents have established a fear of further harm based on their membership in a particular social group . . . they have suffered an atrocious form of persecution that results in continuing physical pain and discomfort, and we conclude that they should not be expected to return to Somalia." Id. at 465-66. Without clearer guidance from the BIA as to what factors warrant a finding of "aggravated" genital mutilation, we express no view on whether Kone's case falls within that category. If Kone seeks asylum on this ground, the BIA may wish to clarify the standard in addressing her case.

Second, even where the severity of the past persecution does not rise to the extreme level required for asylum eligibility on that basis alone, the Department of Justice

22

recognizes that "there may be cases where it is appropriate to offer protection to applicants who have suffered persecution in the past and who are at risk of future harm that is not related to a protected ground." 63 Fed. Reg. 31945-01, 31947 (proposed June 11, 1998) (explaining the decision to add second avenue for humanitarian asylum), now codified at 8 C.F.R. § 1208.13(b)(1)(iii)(B). Accordingly, the regulations make eligible for asylum an applicant who has suffered past persecution and who establishes "a reasonable possibility that he or she may suffer other serious harm upon removal." 8 C.F.R. § 1208.13(b)(1)(iii)(B). "[O]ther serious harm" is defined as "harm that is not inflicted on account of race, religion, nationality, membership in a particular social group, or political opinion, but is so serious that it equals the severity of persecution." 65 Fed. Reg. 76121-01, 76127 (Dec. 6, 2000).

Should Kone press the argument, the Board may consider on remand whether the mental anguish of a mother who was herself a victim of genital mutilation who faces the choice of seeing her daughter suffer the same fate, or avoiding that outcome by separation from her child, may qualify as such "other serious harm." The argument is distinct from a claim of derivative asylum, which would appear to be foreclosed in this Circuit by Shi Liang Lin v. U.S. Dep't of Justice, 494 F.3d 296 (2d Cir. 2007) (en banc), even if the "other serious harm" to support a humanitarian asylum claim is derived from harm

directed, in the first instance, at another.[8]  Unlike a derivative claim, the argument contemplated here is not based simply on the claim that someone else, such as one's child, may be harmed, but rather is guided by humanitarian asylum's foundational requirement that the applicant must herself establish past persecution and herself be a refugee.  For that reason, the Fourth Circuit, even while rejecting the possibility of a derivative claim based on the risk that one's child may be subjected to genital mutilation, has recognized that a "humanitarian grant of asylum may be warranted in circumstances where a mother, who has been subjected to [female genital mutilation], fears her daughter

---

[8] Our sister circuits are split in their treatment of claims of asylum or withholding of removal based on allegations that a petitioner's child will be subjected to genital mutilation if the parent is removed.  Several circuits and the BIA have rejected claims of a parent's derivative asylum or withholding of removal in the context of genital mutilation.  See Kane v. Holder, 581 F.3d 231, 234 (5th Cir. 2009); Gumaneh v. Mukasey, 535 F.3d 785, 789 & n.2 (8th Cir. 2008); Niang v. Gonzales, 492 F.3d 505, 513 (4th Cir. 2007); In re A-K-, 24 I. & N. Dec. 275, 278-79 (BIA 2007) (rejecting parent's derivative asylum or withholding of removal claims but leaving open whether harm to a child imparted with the intent of emotionally harming the parent might provide a basis for the parent's individual claim); see also Oforji v. Ashcroft, 354 F.3d 609, 616 (7th Cir. 2003) (rejecting claim of derivative CAT relief).  The Ninth Circuit, by contrast, remanded to the BIA to consider in the first instance whether a father could derivatively qualify for asylum based on the threat that his alien daughter, who would be constructively deported with him, would suffer female genital mutilation.  Benyamin v. Holder, 579 F.3d 970, 975, 977 (9th Cir. 2009).  Shifting focus away from a parent's eligibility for derivative asylum, the Sixth Circuit has held that an alien parent established her own well-founded fear of future persecution based on her fear that her alien daughter would be forcibly mutilated if they were returned to Ethoipia and thus could qualify for asylum in her own right based on threats to her daughter.  Abay v. Ashcroft, 368 F.3d 634, 641-42 (6th Cir. 2004).  The viability of Abay's non-derivative theory of asylum grounded in a parent's psychological harm in "being forced to witness the pain and suffering of her daughter," id. at 642, has not been addressed in circuit and we express no view on it here.

24

will be subjected to [such mutilation] if she accompanies her mother to the country of removal." Niang, 492 F.3d at 509 n.4 (citing Osigwe v. Ashcroft, 77 Fed. App'x 235, 235 (5th Cir. 2003), which remanded to the BIA to consider both avenues of humanitarian asylum relief under similar circumstances); cf. Benyamin v. Holder, 579 F.3d 970, 977 (9th Cir. 2009) (remanding for the BIA to consider in the first instance whether petitioner's daughter's genital mutilation qualifies petitioner for humanitarian asylum).

We express no view on the merits of any claim Kone might make for humanitarian asylum. That is a decision for the agency to make in the first instance. We note only that the argument is available to Kone on remand.

## CONCLUSION

For the foregoing reasons, we grant the petition, vacate the order of removal, and remand to the BIA – "or [to] the IJ, if that is the most appropriate decision-maker in the first instance," Mahmood v. Holder, 570 F.3d 466, 471 (2d Cir. 2009); accord, Bah, 529 F.3d at 117 – for further proceedings consistent with this opinion. Having completed our review, the pending motion for a stay of removal in this petition is denied as moot.