06-3235-ag
Jalloh v. Gonzales

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: May 1, 2007                    Decided: August 17, 2007)

Docket No. 06-3235-ag

--------------------------------------

OMARO JALLOH,

Petitioner,

- v -

ALBERTO GONZALES,

Respondent.

--------------------------------------

Before:   SACK, SOTOMAYOR, and HALL Circuit Judges.

Petition for review of an order of the Board of Immigration Appeals affirming the denial by an Immigration Judge of the petitioner's application for asylum, withholding of removal, and relief pursuant to the Convention Against Torture.

Petition denied.

> THEODORE VIALET, Esq., New York, NY, for Petitioner.
>
> THOMAS DUPREE, JR., Office of Immigration Litigation, Department of Justice (Matthew H. Mead, United States Attorney, Steven K. Sharpe, Assistant United States Attorney, District of Wyoming, Cheyenne, WY, of counsel), Washington, D.C., for Respondent.

PER CURIAM:

Petitioner Omaro Jalloh, a citizen of Sierra Leone, petitions for review of a June 13, 2006 decision of the Board of Immigration Appeals ("BIA") adopting and affirming Immigration Judge ("IJ") Sarah M. Burr's decision dated April 26, 2004, denying Jalloh's applications for asylum, withholding of removal, and relief pursuant to the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, adopted Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85 ("CAT"). In re Omaro Jalloh, No. A95 467 498 (B.I.A. June 13, 2006), aff'g No. A95 467 498 (Immg. Ct. N.Y. City Apr. 26, 2004). Jalloh argues principally that substantial evidence does not support the BIA's finding that his past persecution was not so severe as to warrant a grant of asylum notwithstanding the fact that Jalloh has no well-founded fear of future persecution. In light of the fact that Jalloh provided no evidence of long-lasting physical or psychological effects of the persecution he experienced, the BIA's decision to deny "humanitarian asylum" was supported by substantial evidence.

**BACKGROUND**

Omaro Jalloh is a citizen of Sierra Leone. He is a member of the Fula tribe. He arrived in the United States on July 14, 2001, and was served with a Notice to Appear on July 1, 2002, charging him with removability on the grounds that he lacked a valid entry document. Jalloh conceded removability and

2

applied for asylum, withholding, and CAT relief. The facts below are taken from his testimony before the IJ, as well as affidavits submitted with his applications for relief.

In 1991 civil war broke out in Sierra Leone between the Revolutionary United Front ("RUF") and the Civil Defense Force, a government militia. Jalloh testified before the IJ that, in 1994, he joined a trader's union supporting democracy in Sierra Leone. Jalloh also supported the Sierra Leone People's Party ("SLPP"), whose leader was Tejan Kabbah. Kabbah was elected president in 1996, but a military coup led by the RUF and the Armed Forces Revolutionary Council ("AFRC") overthrew his SLPP government the next year.

Members of the RUF physically attacked Jalloh on at least two occasions, once also attacking members of his family. In February or March 1997, RUF and AFRC rebels looted his house in Freetown. He pleaded for his life and was spared. The rebels took his valuables, claiming that they were the fruits of Jalloh's support of the opposition.

On January 6, 1999, the RUF attacked Freetown, its soldiers reaching Jalloh's house four days later. The soldiers brought Jalloh and his family out of the house and tied Jalloh's and his wife's hands behind their backs. They proceeded to beat Jalloh and rape his wife, and to burn his house to the ground. They then took him to a mountainous area, where he was held captive for two weeks. There, the RUF beat their prisoners,

3

including Jalloh, keeping them bound and threatening them with death and amputation.  Jalloh survived, however, and was rescued by ECOMOG[1] and government forces.

After spending some time in refugee camps, Jalloh reunited with his family.  Jalloh and his family ultimately crossed over the border into Guinea.  There, he stayed with some business associates for about two years.  He then came to the United States on July 14, 2001, entering with a friend's passport and leaving his family in Guinea, where apparently they still reside.  When asked whether he could return to his home country, Jalloh stated that in Sierra Leone, his "life is not guaranteed, it is not secure.  The older town, they are still there, the rebels, they are still there. . . .  It may be true but it can happen anytime and you have people, you have the rebels in the country, they can go there any day."  Hr'g Tr. dated Apr. 26, 2004, at 36.

The situation in Sierra Leone has improved dramatically since Jalloh fled.  In 2002, the civil war ended, Kabbah was elected to the presidency, and the SLPP won a large majority in Parliament.  The RUF was disarmed and demobilized, although some former RUF members continue to be trouble-makers.  Indictments have been returned by The Special Court of Sierra Leone, a United Nations-Sierra Leone war crimes tribunal, against RUF leaders,

---

[1] The ECOMOG, i.e., the Economic Community of West African States Monitoring Group, is a West African regional peacekeeping force.

4

including those responsible for the RUF's January 1999 attack on Freetown.

The IJ denied the application and ordered Jalloh removed. The BIA, assuming that Jalloh had established past persecution, concluded that the government's evidence of changed country conditions rebutted the resulting presumption of a well-founded fear of future persecution. It then reasoned that "the severity of any persecution which the respondent may have endured does not rise to a level warranting a grant of asylum based on such past persecution alone." In re Omaro Jalloh, No. A95 467 498 (B.I.A. June 13, 2006).

Jalloh petitions this court for review.

**DISCUSSION**

I. Standard of Review

"Where, as here, the BIA adopts and affirms the decision of the IJ, and supplements the IJ's decision, we review the decision of the IJ as supplemented by the BIA." Islam v. Gonzales, 469 F.3d 53, 55 (2d Cir. 2006). We review factual findings under the substantial evidence standard, which requires that findings "be supported by reasonable, substantial[,] and probative evidence in the record." Lin Zhong v. U.S. Dep't of Justice, 480 F.3d 104, 116 (2d Cir. 2007) (quotation marks omitted). Questions of law are reviewed de novo, as are mixed questions of law and fact, including the "proper application of legal principles to the facts and circumstances of the individual

5

case at hand." Secaida-Rosales v. INS, 331 F.3d 297, 307 (2d Cir. 2003).

## II. Asylum Based on Past Persecution

An alien is presumed to have a well-founded fear of future persecution -- and is thereby eligible for asylum -- if he can show that he "has suffered persecution in the past . . . on account of . . . membership in a particular social group, or political opinion, and is unable or unwilling to return to, or avail himself . . . of the protection of, that country owing to such persecution." 8 C.F.R. § 1208.13(b)(1). The government may rebut that presumption, however, if it can demonstrate that conditions in the country have changed such that the alien no longer has a well-founded fear of persecution. See 8 C.F.R. § 1208.13(b)(1)(i). Nevertheless, if the alien "has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution," he is still eligible for asylum even though he does not have a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1)(iii)(A); see also Matter of Chen, 20 I. & N. Dec. 16 (B.I.A. 1989). Asylum granted pursuant to section 1208.13(b)(1)(iii) is known as "humanitarian asylum." See Ben Hamida v. Gonzales, 478 F.3d 734, 740 (6th Cir. 2007).

Jalloh argues[2] in support of his petition primarily that substantial evidence does not support the BIA's conclusion that the severity of his past persecution was insufficient for a grant of humanitarian asylum.[3] The agency has required that in order for an alien to obtain humanitarian asylum, he or she must establish both "the severe harm and the long-lasting effects of that harm." In re N-M-A-, 22 I. & N. Dec. 312, 326 (B.I.A. 1998).

In Matter of Chen, 20 I. & N. Dec. 16, for example, the BIA granted asylum to an alien who testified that because of the persecution he suffered, "he is physically debilitated, must wear a hearing aid due to his head injury, is always anxious and fearful, and is often suicidal." Id. at 20. Conversely, the BIA denied humanitarian asylum to another alien because of, inter alia, "the lack of evidence of severe psychological trauma stemming from the harm" he suffered in his native Afghanistan. In re N-M-A-, 22 I. & N. Dec. at 326.

---

[2] Jalloh also contends that substantial evidence does not support the BIA's finding that country conditions had changed. We disagree. Substantial evidence supports the BIA's findings that 1) the civil war in Sierra Leone ended, 2) Jalloh's party, the SLPP, has gained control, and 3) Tejan Kabbah, Jalloh's preferred candidate, has been re-elected president of Sierra Leone.

[3] The government contends that this argument was waived by Jalloh's failure to raise it before the IJ. The argument was, however, raised before and addressed by the BIA. It is unclear whether this is sufficient to meet the exhaustion requirement. Cf. Abimbola v. Ashcroft, 378 F.3d 173, 180 (2d Cir. 2004). Because we need not resolve this question in order to decide this petition, we assume that the exhaustion requirements have been met and address Jalloh's argument on the merits. See id.

7

Although we have no reason to doubt the gravity of the dreadful mistreatment that Jalloh suffered at the hands of his RUF persecutors, Jalloh provided no evidence of long-lasting physical or mental effects of his persecution that would support his insistence that he not be returned to Sierra Leone. He therefore cannot complain that the BIA improperly failed to consider such evidence.

**CONCLUSION**

For the foregoing reasons, the petition for review is denied.