Thapachhetri v. Sessions

BIA
Straus, IJ
A206 233 429

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of May, two thousand seventeen.

PRESENT:
>       JON O. NEWMAN,
>       JOSÉ A. CABRANES,
>       GERARD E. LYNCH,
>            *Circuit Judges.*

_____

RUDRA NARSHING THAPACHHETRI, AKA
RUDRA NARSHING THAPACHAETRI,
        *Petitioner,*

v.                                        16-284
                                          NAC
JEFFERSON B. SESSIONS III, UNITED
STATES ATTORNEY GENERAL,
        *Respondent.*

_____

FOR PETITIONER:        Khaghendra Gharti-Chhetry, Chhetry & Associates, P.C., New York, NY.

FOR RESPONDENT:        Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Kiley Kane, Senior Litigation Counsel; Sergio Sarkany, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Rudra Narshing Thapachhetri, a native and citizen of Nepal, seeks review of a December 31, 2015, decision of the BIA, affirming a June 16, 2014, decision of an Immigration Judge ("IJ") denying Thapachhetri's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Rudra Narshing Thapachhetri,* No. A206 233 429 (B.I.A. Dec. 31, 2015), *aff'g* No. A206 233 429 (Immig. Ct. Hartford June 16, 2014). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the decisions of both the BIA and the IJ "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

**I. Change in Conditions**

It is undisputed that Thapachhetri established past persecution in Nepal on account of his membership in the Nepali

2

Congress Party ("NCP"). Accordingly, he benefits from a presumption of a "well-founded fear of [future] persecution on the basis of the original claim." 8 C.F.R. § 1208.13(b)(1). However, the Government may rebut this presumption if, among other things, "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in [his] country of nationality." *Id.* § 1208.13(b)(1)(i)(A). The Government "bear[s] the burden of establishing by a preponderance of the evidence" the fundamental change in circumstances. *Id.* § 1208.13(b)(1)(ii). "To determine whether the government has rebutted the presumption entails 'an individualized analysis of whether the changes in conditions in [the relevant country] were so fundamental that they are sufficient to rebut the presumption that [an applicant's] fear of persecution is well founded.'" *Lecaj v. Holder*, 616 F.3d 111, 115 (2d Cir. 2010) (quoting *Passi v. Mukasey*, 535 F.3d 98, 103-04 (2d Cir. 2008)). We review the agency's factual findings regarding changed country conditions for substantial evidence. *Id.* at 114-115; 8 U.S.C. § 1252(b)(4)(B).

We conclude that the agency's finding that the Government demonstrated fundamentally changed country conditions in Nepal rests on substantial evidence. In November 2013, following an

3

election which, according to a State Department report, "[d]omestic and international observers characterized . . . as credible and well-conducted" and "essentially free and fair," the NCP gained control of the majority of seats in parliament. While there are some local articles in the record reporting that members of the Maoist party "committed acts of political violence and intimidation" leading up to the November 2013 election, the record evidence does not report post-election violence by Maoists against NCP members. *Cf. Lecaj*, 616 F.3d at 117 (ruling that State Department report "reflect[ing] ongoing police abuses" was insufficient to establish well-founded fear because the report "d[id] not link those abuses to [petitioner's] ethnicity, religion, [or] political opinion"). In fact, as the agency observed, the evidence suggests that the tables have turned and that the NCP has been threatening Maoist party members. The agency's finding is supported by the record, specifically a March 2014 joint press release from two Maoist party factions complaining of the NCP's arrest and detention of several Maoist party members.

Thapachhetri insists that, notwithstanding the NCP's November 2013 victory, there remains a pattern or practice of persecution of NCP members, as evidenced by the history of Maoist attacks. We have observed that "[t]he removal of a

4

persecuting despot might vitiate an asylum applicant's well-founded fear of persecution, but in many cases lingering elements of a despot's regime may still pose a threat to an applicant's life and safety." *Burger v. Gonzales,* 498 F.3d 131, 135 (2d Cir. 2007). But there is little record evidence about violence against the NCP generally, let alone evidence sufficient to establish a pattern or practice of persecution of NCP members by Maoists. Accordingly, the agency's conclusion that the Government rebutted the presumption of future persecution is supported by substantial evidence. *Lecaj*, 616 F.3d at 115; 8 U.S.C. § 1252(b)(4)(B).

Thapachhetri also argues that the agency erred in not addressing his individualized fear of persecution. Absent a presumption of future persecution, "[a]n asylum applicant can show a well-founded fear of future persecution in two ways: (1) by demonstrating that he or she 'would be singled out individually for persecution' if returned, or (2) by proving the existence of a 'pattern or practice in [the] . . . country of nationality . . . of persecution of a group of persons similarly situated to the applicant' and establishing his or her 'own inclusion in, and identification with, such group.'" *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) (quoting 8 C.F.R. § 1208.13(b)(2)(iii)).

5

Thapachhetri did not demonstrate that he would be singled out individually for persecution in Nepal given the change in circumstances or that there is a pattern or practice of persecution of NCP members.  His fear is based on his assertion that "there is a network of Maoists all over Nepal," as well as a threatening phone call his wife received after he left Nepal.  However, Thapachhetri testified that his wife and children reside in Nepal unharmed.  *See Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 129 (2d Cir. 2005) ("In the absence of solid support in the record . . . , [an applicant's] fear is speculative at best."); *Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir. 1999) (finding alleged future fear diminished when similarly situated individuals are able to live unharmed in asylum applicant's native country).

## II.  Humanitarian Asylum

Thapachhetri argues that he is eligible for humanitarian asylum because he "is mentally scarred" due to the "brutality of [his] past harm."  To merit a grant of humanitarian asylum, an applicant "must establish both 'the severe harm and the long-lasting effects of that harm.'" *Jalloh v. Gonzales*, 498 F.3d 148, 151-52 (2d Cir. 2007) (quoting *In re N-M-A-*, 22 I. & N. Dec. 312, 326 (B.I.A. 1998)); 8 C.F.R. § 1208.13(b)(1)(iii)(A).

6

The agency's conclusion that the severity of Thapachhetri's past harm was insufficient for a grant of humanitarian asylum likewise rests on substantial evidence. In 2012, he was treated at the hospital for four hours for unidentified injuries. And in 2013, he suffered injuries to his shoulder, chest, and arms, for which he was treated with a pain killer, IV fluid, and bandages, and then discharged within three hours because his "condition improved." He did not testify to any long-lasting effects stemming from these incidents. Because Thapachhetri "provided no evidence of long-lasting physical or mental effects of his persecution that would support his insistence that he not be returned to" Nepal, the agency reasonably denied humanitarian asylum. *Jalloh*, 498 F.3d at 152.

**III. CAT Relief**

Finally, Thapachhetri argues that he is eligible for CAT relief because the background evidence establish "that the Maoists . . . still engage in violence and extortion" with governmental acquiescence, as evidenced by police corruption. Although the agency independently addressed CAT and the parties do the same, the only basis for Thapachhetri's fear was the same as for asylum and withholding of removal. Accordingly, the agency's conclusion that that he did not have a well-founded

7

fear of future harm, is dispositive.  *See Lecaj*, 616 F.3d at 119-20 (holding that failure to meet burden for asylum precludes showing needed to meet higher burden for withholding of removal and CAT relief).

    For the foregoing reasons, the petition for review is DENIED.

                                    FOR THE COURT:
                                    Catherine O'Hagan Wolfe, Clerk