Filed 8/23/23  P. v. Macauley CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ALHASSAN MACAULEY, <br><br> Defendant and Appellant. | B319653 <br><br> Los Angeles County <br> Super. Ct. Nos. LA021054, LA021247 |

APPEAL from an order of the Superior Court of Los Angeles County, Gregory A. Dohi, Judge.  Reversed with directions.

Brad Kaiserman for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

A trial court may vacate the criminal conviction of a noncitizen if a preponderance of the evidence establishes that the conviction is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence."  (Pen. Code,[1] § 1473.7, subd. (a)(1); *id.*, subd. (e)(1).)  To establish prejudicial error, defendants must demonstrate a "reasonable probability that [they] would have rejected the plea if [they] had correctly understood its actual or potential immigration consequences."  (*People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*); *People v. Espinoza* (2023) 14 Cal.5th 311, 316 (*Espinoza*).)

In 2021, appellant Alhassan Macauley, a citizen of Sierra Leone, filed a motion to vacate his conviction for rape, alleging his defense counsel gave him no advice as to the adverse immigration consequences of his no-contest plea.  He also asserted he never would have taken the plea bargain had he known the charges compelled his deportation.  The trial court denied the motion to vacate.

Since the trial court's ruling, our Supreme Court has clarified the standard of proof, disapproving the former standard used by this trial court and trial courts around the state.  We therefore reverse with directions to grant the motion to vacate the conviction and withdraw the plea.

---

[1]     Undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Conviction

In 1995, appellant was charged with multiple offenses arising out of an alleged sexual assault on his ex-girlfriend. In addition to being charged with rape, he was charged with anal and genital penetration by a foreign object with force and violence; forcible oral copulation, criminal threats, stalking, conspiring to dissuade a witness, and solicitation to commit a crime. On November 13, 1995, appellant pled no contest to forcible rape of his ex-girlfriend in violation of section 261, subdivision (a)(2). All remaining charges were dismissed. He was sentenced to the mid-term of six years in prison. Deportation proceedings were initiated against him based on this conviction.

During the plea colloquy, the prosecutor advised appellant, "If you are not now a United States citizen, this plea today could cause you to be deported, could result in the denial of the reentry into this country or could serve to prohibit you from becoming a United States citizen." Appellant stated that he understood the advisement.

### II. 2021 Motion to Vacate

On April 14, 2014, appellant moved to vacate his conviction on the ground that he had not been advised of the immigration consequences of his plea as required by section 1016.5. The record is silent as to the ultimate disposition of the motion.

On November 5, 2021, appellant again moved to vacate his conviction and withdraw his plea, this time pursuant to section 1473.7.

3

III.    **Advice of Counsel**

In support of the November 2021 motion, appellant submitted sworn declarations that his counsel never advised him of the immigration consequences of the plea.  Appellant stated that the entire time he was in pretrial detention at the Los Angeles County Jail his counsel did not visit him, nor did he investigate the witnesses appellant wanted to present in his defense at trial.  Instead, during a 10-minute conversation in the courthouse lockup, counsel told appellant he would go to prison for 79 years if he did not take the plea offer.  Appellant's attorney never asked him about his immigration status, despite his accented English.

Prior to the plea, appellant had moved under *People v. Marsden* (1970) 2 Cal.3d 118 to obtain new appointed counsel.  The record is unclear as to the outcome of the motion, although appellant was represented by the same attorney until the end of the case, so we surmise it was denied.  In any event, appellant filed the *Marsden* motion to request the appointment of new counsel as he understood his present counsel had done nothing to prepare his defense for trial.  He also wrote a letter to the trial court asking for a release on his own recognizance so he could retain counsel to represent him.  In the letter he told the court his attorney was not communicating with him.  He declared his innocence and stated the charges were trumped up by a girlfriend and prior girlfriends trying to cash in on his property which, he averred, they split among themselves after his arrest.  He offered to take a lie detector test to prove his innocence.

4

## IV.  Facts Presented in the Motion

In his November 2021 motion, appellant advised that he was a citizen of Sierra Leone who entered the United States in 1977 at the age of nine.  His mother and father legally resided in the United States at that time.  At the time of his arrest he was 27 years old and a legal permanent resident of the United States.  He had never before been arrested.  He had never returned to Sierra Leone and had no contacts or known family members there.  When he was charged, appellant had one 5 year-old daughter and his country of origin, Sierra Leone, was engaged in a civil war.

Appellant added that his parents and U.S. citizen siblings still reside in this country.  Since his conviction he had married.  His children and stepchildren were also citizens.  As of June of 2004, appellant worked as a patient transport driver at DW Medical Supply/Transportation.  In letters to the court appellant's employer praised him for his "kindness and personable nature," "excellent work habits," "reliability" and "excellent customer services skills."

## V.  The Trial Court's Hearing and Decision

On February 24, 2022, the trial court held an evidentiary hearing on appellant's motion to withdraw his plea.  In addition to submitting sworn declarations and written exhibits, appellant testified that counsel never advised him of the immigration consequences of the plea; he took the plea because he wanted to see his five-year-old daughter grow up, and he would not have taken the plea had he known he would be deported because "why would I go to prison and then get deported afterwards?"  This was his "first and only offense" and "first time ever in custody,"

according to his counsel's argument.  He was isolated from family while in custody and his attorney did not visit him there.  He was told that if he took the plea offer of six years, he would be out sooner to see his daughter.  Unaware of the immigration consequences, he later applied for citizenship and was placed in deportation proceedings based on the conviction.

Appellant testified he wanted to defend himself against the charges and his attorney was doing nothing to investigate or prepare a defense on his behalf.  He advised the court he "ended up just hav[ing] to take the plea bargain because I don't know what else is going to happen.  [The attorney] said: Don't worry.  You're going to waste your life in prison.  This is all you've got.  You've got a daughter to take care of, and this and that.  And that's why I took the deal. [¶] If I knew that I was going to be deported because of taking the plea, I wouldn't have taken it because of the fact that why would I go to prison and then get deported afterwards?  Because I'm going to lose the time with her and the time being somewhere else."  Appellant continued: "When I tried—applied for my citizenship that's when all this situation came about with this immigration.  I never knew that the immigration—what happened in 1995 was going to reflect on me today because everything I been doing, you know—matter of fact, this is one of the lessons I teach my kids.  You have no reason not to be able to succeed."  As for his attorney, appellant testified: "He gave me no information, no help, no assistance, no anything for me to feel that I can be represented.  That's why I asked for O.R.  At the time I did not know the case, O.R. was, you know.  Was too low or whatever.  That's all I know.  I was learning because that's when—you know, being in there that's all I knew.  I didn't understand the system.  All I was doing was

6

trying to be able to get out to be able to have an attorney to represent myself."

Before hearing any testimony, the trial court gave a tentative ruling: "So my tentative ruling, based on what I have before me, would be to deny the motion because there is an absence of independent evidence that Mr. Macauley would have rejected the deal had he been properly made aware of the immigration consequences. There is a lack of evidence that he— that his public defender didn't advise him properly. There is no evidence that there was a possibility of an alternative disposition that didn't carry immigration consequences. [¶] That's my tentative ruling. I would give counsel an opportunity to file a more detailed declaration."

Two weeks later on February 24, 2022, the parties reconvened for the evidentiary hearing. The court stated: "When we were here last, I urged counsel to take a look at the *Vivar*, V-i-v-a-r, case, 2021, 11 Cal.5th, 510, which is, I think the latest guidance from the Supreme Court as to how I'm supposed to interpret the statute. And it requires that the moving party, in addition to showing that the petitioner got insufficient or incorrect advice when it comes to immigration consequences, petitioner must also demonstrate a reasonable probability that he would have rejected the plea had he correctly understood the actual immigration consequences. So, that's part of the moving party's burden. [¶] . . . [¶] So when it comes to establishing number one that the advice was inadequate or insufficient, is there anything—is there anything independent? Something else that the *Vivar* case mentioned, independent quote/unquote objective evidence that he got inadequate or insufficient advice, and is there anything especially in a case such as this, where we

7

have nothing from the original lawyer, anything to show that Mr. Macauley, who was looking at more than 75 years in prison at 85 percent, wouldn't have taken the deal?"

After hearing appellant testify, the court stated: "So here's my ruling: I'm focusing on the *Vivar* case. Has Mr. Macauley demonstrated a reasonable probability that he would have rejected the deal? Is there quote/unquote objective evidence to corroborate the claim that he's making now that he wouldn't have taken the deal? [¶] Looking at the *Vivar* case is really instructive, looking at the similarities and differences between that set of facts and this set of facts is, I think the clearest way to address the issues raised by this case. [¶] As in *Vivar*, we have a defendant who came to the United States at a very young age. As in *Vivar*, we don't have any evidence of any particularly strong ties to the country of origin. The differences, however, are very compelling. In *Vivar*, there was an alternate offer, one that didn't carry immigration consequences. There's no evidence here that there was ever an offer made that would have avoided immigration consequences. There was nothing to indicate that the D.A. had ever offered anything other than the six years."

The court further stated, "No evidence of any other charges being discussed or even what that charge might have been. In the *Vivar* case, there was something from prior counsel. And in fact, the inadequacy of the response from prior counsel is one of the things that the court of appeal took into consideration. [¶] Here we have nothing from either side as to what Mr. Boche, a public defender, what he said to Mr. Macauley regarding the immigration consequences of the plea. [¶] In *Vivar*, there was something—and the Court of Appeal could deduce from it the inadequacy of the legal advice. In *Vivar*, the petitioner

8

repeatedly asked for the case to be reopened, sought at a very early stage to withdraw the plea. We don't have that here, although we have something from 2015, according to the declaration—the original declaration of Mr. Macauley, once deportation proceedings were initiated. [¶] At that point, he attempted to attack the plea, however, apparently, there wasn't a habeas based on inadequate assistance of counsel. Not that the standard's necessarily the same, but the mere fact that he had an opportunity to raise these issues previously and didn't is something that I can't [*sic*] consider. [¶] In *Vivar* there was, as in this case, a letter to the judge. That letter specifically mentioned immigration. [¶] . . . [¶] Bottom line, the differences from this set of facts and the set of facts in *Vivar* are illustrative and they're pretty compelling. The fact that Mr. Macauley was facing more than 75 years of custody, even though he might never have gotten that, even if he had only gotten half or a third of that, it still would have made sense for him to take the six-year deal, and in the absence of any independent evidence to the contrary the motion and the petition is respectfully denied. [¶] I'm well aware Mr. Macauley has been a productive person with strong family ties and has le[]d, in many ways, an exemplary life so far as I can deduce, so far as I can tell; nevertheless, the petition doesn't reach the threshold."

Thus, based on the comparison of the facts in *Vivar* to the facts presented by appellant, and relying on the standard seeming to require corroborative evidence contemporaneous in time with the plea to support a non-citizen's testimony, the trial court denied the motion. This timely appeal followed.

## DISCUSSION

### I. Applicable Law

Mandatory deportation from the United States is an immigration consequence where a defendant is convicted of a crime deemed an aggravated felony under federal immigration law. (*Moncrieffe v. Holder* (2013) 569 U.S. 184, 187–188; 8 U.S.C. § 1228(c) [aggravated felony is conclusively presumed deportable].) Rape is an aggravated felony. (8 U.S.C. § 1101(a)(43)(M)(i).)

Section 1473.7 authorizes a person to file a motion to vacate a conviction or sentence for any of the following reasons: "The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1).)

Effective January 1, 2019, legislative amendments to section 1473.7 afforded a defendant relief under the statute without a showing of ineffective assistance of counsel per the *Strickland*[2] standard. (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1005.) To establish prejudice, defendants must show by a preponderance of the evidence that they did not meaningfully understand or knowingly accept the actual or potential adverse immigration consequences of the plea. (*Camacho*, at pp. 1010–1011; see *People v. Mejia* (2019) 36 Cal.App.5th 859, 862 (*Mejia*); see *People v. Martinez* (2013) 57 Cal.4th 555, 565 [defendants may show prejudice by convincing the court that a reasonable

---

[2]     *Strickland v. Washington* (1984) 466 U.S. 668.

10

probability exists they "would have chosen to lose the benefits of the plea bargain despite the possibility or probability deportation would nonetheless follow"]; *People v. Rodriguez* (2021) 60 Cal.App.5th 995, 1003.)

The advisement that a defendant *may* face certain adverse immigration consequences is insufficient to inform a defendant that the conviction would subject him to mandatory deportation and permanent exclusion from the United States. (*People v. Lopez* (2022) 83 Cal.App.5th 698, 712 (*Lopez*); *Vivar, supra,* 11 Cal.5th at p. 521 [to warn merely that a plea might have immigration consequences in circumstances where the consequences were certain is constitutionally deficient]; *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 204 [same].)

Apart from a trial court's advisement, defense counsel has an independent obligation to explain to clients the adverse immigration consequences of a criminal plea. (*People v. Manzanilla* (2022) 80 Cal.App.5th 891, 905 (*Manzanilla*).)

The importance of counsel's responsibility to give a client a complete advisement of all material adverse immigration consequences cannot be overstated – and it is not excused by official admonitions given during plea colloquy. As our Supreme Court has stated: "That defendants have a right to counsel when they undertake the plea evaluation and negotiation specifically provided for in section 1016.5, subdivisions (b) and (d) is not disputed. . . . '[I]t is the attorney, not the client, who is particularly qualified to make an informed evaluation of a proffered plea bargain.' [Citation.] Thus, whether or not the court faithfully delivers section 1016.5's mandated advisements, '[t]he defendant can be expected to rely on counsel's independent evaluation of the charges, applicable law, and evidence, and of

11

the risks and probable outcome of trial.' " (*In re Resendiz* (2001) 25 Cal.4th 230, 240–241, abrogated on other grounds by *Padilla v. Kentucky* (2010) 559 U.S. 356, 370.)

The key to section 1473.7 is "the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken." (*Mejia, supra*, 36 Cal.App.5th at p. 866.) Showing prejudicial error under section 1473.7, subdivision (a)(1) means "demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances." (*Vivar, supra*, 11 Cal.5th at p. 529.) Factors relevant to this inquiry include appellant's ties to the United States, the importance appellant placed on avoiding deportation, appellant's priorities in seeking a plea bargain, and whether appellant had reason to believe an immigration-neutral negotiated disposition was possible. (*Id.* at pp. 529–530; *Espinoza, supra*, 14 Cal.5th at p. 320.) Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial. These factors are not exhaustive and no single type of evidence is a prerequisite to relief. (*Espinoza,* at pp. 320–321.)

Ties to the United States are an important factor in evaluating prejudicial error under section 1473.7 because they shed light on a defendant's immigration priorities. (*Vivar, supra*, 11 Cal.5th at pp. 529–530.) When long-standing noncitizens residents of this county are accused of committing a crime, "the most devasting consequence may not be a prison sentence, but

12

their removal and exclusion from the United States." (*Id*. at p. 516; *Lopez, supra*, 83 Cal.App.5th at p. 703 (*Lopez*); *Mejia, supra,* 36 Cal.App.5th at p. 872 [compelling evidence of prejudice where the defendant lived in the United States since he was 14 years old, and his wife and child lived here, as well as his mother and siblings].)

II. **Standard of Review**

In *Vivar*, the California Supreme Court determined the standard of review for section 1473.7 proceedings and endorsed the independent standard of review. (*Vivar, supra*, 11 Cal.5th at p. 524.) Under independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law. (*Id*. at p. 527.) Independent review is not the equivalent of de novo review. (*Ibid*.) An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. (*Ibid*.) Factual determinations by the trial court are given particular deference, even though courts reviewing such claims generally may reach a different conclusion from the trial court on an independent examination of the evidence even where the evidence is conflicting. (*Ibid*.) Where the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, the trial court and the appellate courts are in the same position in interpreting written declarations when reviewing a cold record in a section 1473.7 proceeding. (*Vivar*, at p. 528.) It is for the appellate court to ultimately decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7. (*Vivar*, at p. 528.)

13

Here we note that the trial court did not make a credibility determination as to appellant's oral testimony at the hearing. Instead, the trial court appeared to deny the motion because appellant's motion was not corroborated by evidence contemporaneous in time with the plea. This approach, as we will discuss, has been abrogated.

III. **Analysis**

A. *Understanding of the Immigration Consequences of the Plea*

A preponderance of the evidence supports our conclusion that appellant did not understand the consequences of his plea. His sworn testimony establishes that he was never advised by his own counsel that he was subject to deportation, let alone, as here, mandatory deportation. Appellant's testimony that he was unaware of the immigration consequences is corroborated by the fact that notwithstanding his conviction, he applied for citizenship, an act that triggered the deportation proceedings. Had he known his deportation was a certainty, it is logical to infer that he never would have invited the attention and scrutiny of immigration authorities by applying for citizenship.

The trial court's insufficient advisement that appellant could face deportation when deportation was indeed mandatory is another factor supporting our conclusion that appellant did not fully understand the consequences of the plea.

Here the trial court noted that there was no declaration from appellant's trial counsel about what, if any, advisements were given to appellant. The court cited *Vivar* for the proposition that a moving party's testimony had to be corroborated by evidence contemporaneous in time with the plea. That is indeed

14

how *Vivar* had been interpreted by trial and appellate courts at the time of the hearing. (*Espinoza, supra*, 14 Cal.5th at p. 324.) But in *Espinoza,* our Supreme Court repudiated that interpretation and emphasized that the inquiry requires consideration of the totality of the circumstances which necessarily involves case-by-case examination for the record, and "no specific kind of evidence is a prerequisite to relief." (*Id.* at p. 325.)

### B. *Prejudice*

Appellant must show prejudice in addition to error. "[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar, supra*, 11 Cal.5th at p. 529.) "Reasonable probability" does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility. (*People v. Soto* (2022) 79 Cal.App.5th 602, 610; *People v. Rodriguez* (2021) 68 Cal.App.5th 301, 324.) Indeed, reasonable probability requires reversal when there exists at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result. (*Ibid.*)

Appellant's ties to the United States were lifelong. He arrived here when he was nine years old. At the time of the plea, he had been in this country almost 20 years and had a United States citizen five-year-old daughter. He had no known familial ties to Sierra Leone, the country of his birth and has never returned to Sierra Leone since moving here. (*Lopez, supra*, 83 Cal.App.5th at p. 716; *Manzanilla, supra*, 80 Cal.App.5th at p. 912 [courts noting lack of ties to country of birth as factor

15

supporting finding of prejudice].)  Appellant has a spouse and biological and stepchildren who are United States citizens.  Both his parents still live in the United States as well as his siblings who are American citizens.

Appellant's long residence in this country, coupled with his resident nuclear and extended family members, militate in favor of a finding of prejudicial error.  His lengthy and legal United States residence is evidence itself of appellant's ties to the United States, an important factor in evaluating prejudicial error because they shed light on a defendant's immigration priorities. (*Espinoza, supra*, 14 Cal.5th at p. 321.)  As our high court has stated, appellant's longstanding ties "weigh in favor of finding that he would have considered immigration consequences to be of paramount concern in deciding whether to accept a plea agreement." (*Id.* at p 322.)

Another consideration is whether alternative, immigration-safe dispositions were available at the time of the plea.  Factors relevant to this inquiry include defendant's criminal record, the strength of the prosecution's case, the seriousness of the charges or whether the crimes involved sophistication, the district attorney's charging policies with respect to immigration consequences and the existence of comparable offenses without immigration consequences. (*Espinoza, supra*, 14 Cal.5th at p. 323; *Mejia, supra*, 36 Cal.App.5th at p. 873.)

There is no evidence that appellant has a criminal record apart from the instant conviction and certainly nothing since the instant conviction.  That fact is relevant because a defendant without an extensive criminal record may persuasively contend that the prosecutor might have been willing to offer an alternative plea without immigration consequences.  (*Espinoza*,

*supra*, 14 Cal.5th at p. 324.)  Also relevant is the prosecutor's willingness to deviate so far from a 79-year maximum sentence to a six-year sentence.  This may represent the prosecutor's assessment of problems of proof in a "he said-she said" case, a willingness to give appellant a break given the absence of a prior criminal record, or more focus on getting a conviction rather than the length of the sentence.  Whatever the reason, that the prosecutor was willing to deviate significantly from 79 years to six years indicates there may have been room to negotiate an immigration-neutral disposition that may have gelled with the prosecutor's priorities.  (*Ibid.*)  Of course, because appellant's counsel did not advise him of the mandatory deportation consequence of pleading no contest as he did, it is unlikely anyone focused on the possibility or probability of an alternative plea disposition.

What is unrebutted is that remaining in the United States was a priority for appellant because he wanted to see his five-year-old daughter grow up.  Accepting a plea that involved mandatory deportation halfway around the world was anathema to his goal of seeing his daughter grow up.  It also conflicted with the benefit of serving only a six-year sentence and being released back to his family in this country.  Finally, appellant's long held desire not to return to Sierra Leone (he raised it in 2014 in his initial motion to vacate his plea) makes sense given that Sierra Leone was in the throes of a lengthy and violent civil war at the time of his plea.  (*Jalloh v. Gonzalez* (2d Cir. 2007) 498 F.3d 148, 149–150 [civil war in Sierra Leone lasted from 1991 to 2002].)

17

Since the trial court's ruling, its seeming focus on contemporaneous corroborating evidence of a defendant's priorities or a particular combination of facts that mirror *Vivar* has been disfavored. In *Espinoza*, the Court reiterated that the inquiry under section 1473.7 requires consideration of the totality of the circumstances "which necessarily involves case-by-case examination of the record [citation], and no specific kind of evidence is a prerequisite to relief." (*Espinoza, supra*, 14 Cal.5th at p. 325.)

The totality of the circumstances supports our conclusion that appellant has shown a reasonable probability that had he understood the mandatory consequences of the plea, he would have rejected the plea and either gone to trial or sought a different, immigration-neutral disposition. He has been in the United States since 1977 when he arrived at age nine. He arrived with permanent residency status and applied for United States citizenship. He has no known remaining familial ties to Sierra Leone as his parents and siblings were all in the United States. He has a United States citizen wife and child. He had little prior familiarity with the criminal justice system and there is nothing in the record to suggest he sustained other felony convictions in his lifetime. He immediately filed a motion to vacate his convictions in 2014 when he was placed in deportation proceedings.

Indeed, while each case stands on its own facts, appellant's facts eerily mirror those that warranted relief in *Espinoza*. This includes that Espinoza lived and worked openly after his conviction (as did appellant). And, seemingly oblivious, he left the country and returned on an international commercial flight, learning of the immigration consequences of his conviction when

he was questioned by immigration officials upon his return and placed in deportation proceedings. (*Espinoza*, *supra*, 14 Cal.5th at p. 320.) Appellant sealed a similar fate when he applied for citizenship.

We conclude appellant's long and deep ties to the United States, his lack of experience with the criminal justice system, and his oblivious attempt to apply for U.S. citizenship despite his conviction sufficiently corroborate appellant's claim that his ability to remain in the United States would have been expressed as a paramount concern had he been advised of the issue. (See *Lopez*, *supra*, 83 Cal.App.5th at pp. 703–704 [" 'the prospect of deportation "is an integral part," and often even "the most important part," of a noncitizen defendant's calculus in responding to certain criminal charges' "].) We conclude it is reasonably probable appellant would have rejected the plea agreement had he correctly understood the adverse mandatory deportation consequences that flowed from it.

Exercising independent review, we conclude appellant has carried his burden for section 1473.7 relief. Accordingly, we reverse and remand with directions to the trial court to grant appellant's motion to vacate the conviction pursuant to section 1473.7, subdivision (e).

19

## DISPOSITION

The order denying appellant's motion to vacate his conviction is reversed.  The matter is remanded to the superior court with directions to grant the motion and vacate the plea.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

VIRAMONTES, J.