Singh v. Garland

BIA
Segal, IJ
A208 751 416

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of January, two thousand twenty-five.

PRESENT:
>     RICHARD C. WESLEY,
>     STEVEN J. MENASHI,
>     ALISON J. NATHAN,
>         *Circuit Judges.*

_____

BALJIT SINGH,
>     *Petitioner,*

>     v.                                                    **22-6561**
>                                                           **NAC**

MERRICK B. GARLAND, UNITED
STATES ATTORNEY GENERAL,
>     *Respondent.*

_____

**FOR PETITIONER:** Jaspreet Singh, Law Office of Jaspreet Singh, Richmond Hill, NY.

**FOR RESPONDENT:** Brian M. Boynton, Principal Deputy Assistant Attorney General; Linda S. Wernery, Assistant Director; Gerald M. Alexander, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Baljit Singh, a native and citizen of India, seeks review of a November 22, 2022, decision of the BIA affirming a July 1, 2019, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Baljit Singh,* No. A 208 751 416 (B.I.A. Nov. 22, 2022), *aff'g* No. A 208 751 416 (Immig. Ct. N.Y. City July 1, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). "We review the [agency]'s legal conclusions *de novo*, and its factual findings . . . under the substantial evidence

2

standard." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) (quotation marks omitted). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## I.    Internal Relocation

Asylum is a form of discretionary relief available to a refugee "who is unable or unwilling to return to" his or her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42), 1158(b). "Withholding of removal, meanwhile, is mandatory" if "it is more likely than not that he or she would be subject to persecution in the country" on account of a protected ground. *Singh v. Garland*, 11 F.4th 106, 114 (2d Cir. 2021) (quotation marks omitted); *see also* 8 U.S.C. § 1231(b)(3)(A).

The agency found that Singh suffered past persecution when he was twice beaten by supporters of the Akali Dal Badal Party ("Badal Party"), who demanded that Singh's father stop supporting the rival Akali Dal Mann Party ("Mann Party"). Accordingly, a presumption of a well-founded fear of future persecution existed that the Department of Homeland Security ("DHS") was required to overcome.

3

*See* 8 C.F.R. §§ 1208.13(b)(1) (asylum), 1208.16(b)(1) (withholding).[1] To do so, DHS was required to establish, by a preponderance of the evidence, that Singh could avoid persecution through internal relocation and that it would be reasonable to expect him to do so. 8 C.F.R. §§ 1208.13(b)(1)(i)(B), 1208.16(b)(1)(i)(B). Factors relevant to the reasonableness of internal relocation include "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." *Id.* §§ 1208.13(b)(3), 1208.16(b)(3). The agency did not err in concluding that Singh could safely relocate and that such relocation was reasonable.

Contrary to Singh's argument here, the agency reasonably concluded that his claim was premised on an imputed political opinion based on his relationship to his father, and that he did not assert in his application or at his hearing that he

---

[1] Citations are to regulations in effect at the time of the IJ's decision. *See Garcia v. Garland*, 64 F.4th 62, 67 n.3 (2d Cir. 2023); *see also* Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review, 85 Fed. Reg. 80274, 80281–80282, 80380 (Dec. 11, 2020) (explaining that subsequent amendments to the relevant regulations are not retroactively applicable to applications filed before their effective date).

held a political opinion or would engage in political activities. Singh denied being a Mann Party member, and he testified that his abusers wanted to influence his father's political activities and suspected that he might choose to join the Mann Party in the future because his father was a member, but he did not testify that his abusers' suspicions were correct, that he held pro-Mann Party or Sikh separatist beliefs, or that he would engage in political activities. The agency was not required to interpret Singh's ambiguous statement on cross-examination that he was "with" the Mann Party as alleging that he held a political opinion in support of the party. *See Siewe v. Gonzales*, 480 F.3d 160, 167 (2d Cir. 2007) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). And Singh conceded that members of opposing parties would not be interested in harming him if they did not know that his father was a Mann Party supporter.

Moreover, contrary to Singh's suggestion, he had a fair opportunity to present a claim premised on his own political opinion, and the IJ had no obligation to further develop the record under the circumstances—Singh was represented by counsel, he never alleged that he held a political opinion, and his statement arguably alluding to such an opinion had a plausible alternative meaning (that he

5

was the close relative of a party supporter). *See Islam v. Gonzales*, 469 F.3d 53, 55 (2d Cir. 2006) (discussing an IJ's "obligation to establish and develop the record," but also an IJ's "responsibility to function as a neutral, impartial arbiter and . . . be careful to refrain from assuming the role of advocate"). To the extent Singh argues that the agency improperly assumed that he would refrain from political activities, that argument is misplaced because he never alleged that he had engaged in, or intended to engage in, such activities.

Nor did Singh allege that his father's political activities as a Mann Party worker were known outside of their community in Punjab. Instead, he asserted that he could not safely relocate because he would be subject to background checks by prospective landlords and employers, those checks would alert the local police in Punjab to his location, and the local police would share that information with the Badal Party, whose members would kill him. The agency reasonably concluded that background checks were not a barrier to relocation: even if Singh were subject to such checks, there is no evidence that the police would harm him or disclose his location to the Badal Party, as neither he nor his father had been arrested or charged with a crime in India, he did not allege that the police were looking for him, the Badal Party was no longer the ruling party in Punjab, and

6

Singh did not allege that he held a political belief disfavored by the police. Because members of a political party, even of the party in power, are not necessarily government actors, the agency was not required to find that his attackers were government-sponsored, even considering the Badal Party's alignment with the nationally ruling Bharatiya Janata Party ("BJP"). *See Singh*, 11 F.4th at 115 ("An applicant's allegation that he was persecuted by members of a political party—even one that is in power nationally or . . . is aligned with a party in power nationally—does not establish that the applicant was persecuted by the government." (footnote omitted)). There is also no support for Singh's assertion here that his attackers acted on the instructions of government officials. *See Pretzantzin v. Holder*, 736 F.3d 641, 651 (2d Cir. 2013) ("[T]he arguments of counsel are not evidence.").

In assessing the reasonableness of relocation to Haryana or Delhi, the agency appropriately considered that there are large Sikh populations in those places, that Singh reported no physical or psychological problems, and that he is a young adult who developed sufficient language and driving skills to work in the United States. *See* 8 C.F.R §§ 1208.13(b)(3) (listing factors), 1208.16(b)(3) (same). Singh argues that the agency overlooked human rights violations in India, but he

does not identify abuses of Sikhs similarly situated to himself in Haryana or Delhi. Singh also argues that the agency drew unfair inferences from his activities in the United States without accounting for the differences between the countries—but he relies on his belated assertion that he is a Mann Party supporter, and he mischaracterizes the agency's decisions as having treated his ability to work in the United States as dispositive of his ability to relocate (rather than one of multiple probative factors).

Singh's argument that DHS was required to present additional evidence fails because it may carry its burden "by adducing additional evidence or resting upon evidence already in the record." *In re H-*, 21 I. & N. Dec. 337, 346 (B.I.A. 1996). Singh's ability to avoid harm by relocating within India was also dispositive of CAT relief because it precluded him from showing that he was more likely than not to be tortured. *See* 8 C.F.R. §§ 1208.16(c)(2), (3)(ii) (placing burden on applicant to establish that torture is "more likely than not" and identifying the ability to relocate to a place where torture is not likely as a factor in that determination); *Singh*, 11 F.4th at 118 (applicant's "ability to relocate internally means that he cannot establish a likelihood of torture").

8

## II.     Humanitarian Asylum

Humanitarian asylum is available absent a well-founded fear of future persecution if the applicant "demonstrate[s] compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution" or "establishe[s] that there is a reasonable possibility that he . . . may suffer other serious harm upon removal to that country." 8 C.F.R. § 1208.13(b)(1)(iii).  The agency does not err in denying humanitarian asylum based on the severity of past harm where, as here, the applicant fails to present "evidence of long-lasting physical or mental effects of his persecution."  *Jalloh v. Gonzales*, 498 F.3d 148, 151–52 (2d Cir. 2007).  Moreover, when asked if he feared other harm in India, Singh simply repeated that he feared political persecution by the Badal Party and BJP.  He argues here that he is entitled to humanitarian asylum based on his fear of the Congress Party, which was the ruling party in Punjab at the time of his hearing, and the BJP because the police work for the government and can find him anywhere in India.  However, as discussed earlier, that fear is speculative: there is no reason that the police or members of rival political parties would look for Singh if he relocated because he did not testify that he holds a political opinion or planned to engage in political activities.

9

For the foregoing reasons, the petition for review is DENIED.   All pending

motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court